Sterling v. Sterling.

ELLA A. STERLING v. SYLVESTER W. STERLING.

*Bastardy. Evidence. Impeachment.*

Evidence on the part of the defense, in a prosecution for bastardy, tending to show sexual intercourse by the plaintiff with others than the defendant, and acts of indecent familiarity with them tending to show such intercourse, outside of the time within which, according. to the course of nature, the child in question could have been begotten, is inadmissible. Nor is this evidence rendered admissible by inquiries as to such acts, being first made of the plaintiff on the stand, and her denial of them. Nor does her answering without objection give the defendant the right to introduce evidence to contradict her answers, even for the purpose of impeaching or discrediting her testimony.

The error in admitting such testimony, is not cured by the direction of the court to the jury in the charge not to consider it, as it had no tendency to show that the defendant was not the father of the child, the verdict being for the defendant.

Evidence that the plaintiff applied to a physician for medicine to procure an abortion, and that. she attempted to procure an abortion, and what she said to others on that subject, is inadmissible in a prosecution for bastardy. It would, therefore, be error for the court to admit it, and charge the jury that it was evidence tending to contradict and discredit the plaintiff, she having denied it on cross-examination.

One witness testified that, after the child was born, he asked the plaintiff whose fault it was that the defendant and his wife had no children, and that she replied she did not know. *Held,* that the question and the reply should have been excluded by the court.

The ruling of the county court in admitting the testimony of Wilbur N. Thurston as to the conduct of the plaintiff with Carlos Thurston, prior to the time when the child could have been begotten, *held* erroneous, under the circumstances of the case.

The plaintiff, in such prosecution, can not be regarded as becoming a mere nominal party without interest, by the town's assuming the control of the prosecution; her declarations, therefore, after the town assumes control, in relation to material facts in the case, are evidence in chief, but not conclusive.

Evidence tending to show that the complainant's general reputation for truth and veracity was not good, both prior and subsequent to the time when this controversy arose, *held* admissible under proper instructions to the jury as to the force and weight to be given to it.

COMPLAINT for bastardy; sworn to November 28, 1865. Plea, not guilty. Trial by jury, May term, 1867, BARRETT, J., presiding.

The complainant testified, and her testimony tended to prove that the defendant had intercourse with her on the 31st day of May, 1865, and that the child was then begotten by the defendant; that at that time she was sixteen years of age; that the child was born on the 4th day of March, 1866; that she was a single woman and never married; that at the age of six years the defendant and his wife took her to bring up as their own child (they having no children of their own), and that she was ever afterward called Sterling, but her real name was Luce; and that she lived in the defendant's family until, on the night of the 2d

of June, 1865, between two and three o'clock in the morning, she left the defendant's house in Sharon, to seek her mother's house in Strafford which was some six or eight miles distant, which she reached the next day (June 3), at about 5 o'clock, *p. m.*, having called on an acquaintance on the way and taken dinner with her. She further testified, and her testimony tended to show that, when she left the defendant's house, she did not know where her mother lived, never having visited her but twice after she went to the defendant's to live, and that she took with her a small bundle of clothing, and went along the road past the houses of one Thurston and one Avery, and then turned into a lot, and remained until the dew was off in the morning, and then came back into the road, and passed along the road toward her mother's, inquiring of different persons living on the road the direction and route to her mother's. Her testimony further tended to prove that, when she was about ten years old, the defendant first commenced his attempts to have intercourse with her, and continued those attempts from time to time, as he had opportunity, for about a year, when he succeeded in having intercourse with her; and after this he frequently had intercourse with her; and the last time he thus had intercourse was on the 31st day of May, as above stated; and that he had intercourse with her about one week previous to that time; and that the defendant used to say to her that he had taken her as his child, and that she must mind him and do as he said.

On cross-examination she was inquired of, whether she had not had intercourse with any other person, and she stated that she had not; and she was particularly interrogated in this respect and as to particular instances named. She was further inquired of, as to her acquaintance and familiarities with Carlos Thurston, King Blanchard and Monroe Walbridge, neighboring young men, and she stated that they were frequently at the defendant's house when she lived there; sometimes when the defendant and his wife were there, and sometimes when they were gone; and frequently some neighboring girls would be there at the same time, and they would have games and plays; and that sometimes she may have sat in their laps; but denied all improper familiarities with them. She was further interrogated on cross-examination, whether she did

not tell one Mrs. Brown that the night she left the defendant's house she stayed in Thurston's barn, and whether she did not tell her that she got breakfast for Carlos Thurston in the morning; and she denied telling her so, and denied that the fact was so. She was further inquired of, as to having stated to said Mrs. Brown, who was a town pauper supported at her mother's, a great variety of facts and circumstances, at different times after the child was sworn and until its birth and beyond, until Mrs. Brown was removed from her mother's, sometime after the birth of the child, in relation to her condition and what she had said and done; and as to some of the inquiries she admitted that she might have so stated in the hearing of Mrs. Brown, and as to others she denied having so stated, and denied that the fact was so.

Mrs. Brown was subsequently called by the defendant as a witness, and stated that Ella told her that she staid in Thurston's barn the night she left the defendant's house, and got breakfast for Carlos Thurston in the morning, and stated as to many other facts and circumstances of which inquiry had been made of Ella on cross-examination, and many of which had been denied by Ella as aforesaid. The defendant proposed further to prove by Mrs. Brown that, whilst Ella was living at her mother's, she attempted to procure an abortion of her child, and that she knew this from what she saw and heard and from what Ella told her, and that Ella had told her that her mother had sent her medicine to Canaan, N. H., whilst Ella was living there, in August or September, 1865, for this purpose. To this testimony the plaintiff's counsel objected, but the court overruled the objection and permitted the witness to testify, to which the plaintiff excepted. The witness testified substantially as above stated.

Ella and the testimony on her part given by her mother, denied any such attempts and the sending of any medicine for such purpose.

The defendant called Dr. Whitcomb as a witness, and offered to prove by him that on the 25th day of November, 1865, Ella applied to him to know whether she was pregnant, and when he informed her that she was, she wanted to get some medicine to get rid of the child. To all inquiries about wanting to get medi-

cine for the purpose of an abortion the plaintiff objected, but the court overruled the objection and permitted the inquiry, to which the plaintiff excepted. The witness stated that she inquired for medicine for this purpose, but he declined to let her have any.

The defendant offered to prove by the following named witnesses, intercourse by Ella, and facts tending to show intercourse with other men, at the times and under the circumstances hereinafter stated, to which the plaintiff's counsel severally objected; but the court overruled the objections and permitted the witnesses to testify, to which the plaintiff excepted. The witnesses testified substantially as follows.

Edmund Burke testified that about five years ago, in the winter, when Ella was attending school in his district, one night when she was stopping with his sister, he asked her to get into his bed, and she did, and he had intercourse with her.

Harlow J. Lee testified that late in the fall of 1862 or 1863 he was at the defendant's house, where his brother was living, and between sundown and dark was playing "I spy" with Ella, his brother and another boy, and went behind the barn with Ella, and there had intercourse with her.

Alonzo Avery testified that in the spring of 1864 he was at the defendant's house, and the defendant and his wife were gone, and Ella asked him into the bedroom, and he there had intercourse with her.

Wilbur N. Thurston testified that in February, 1865, he went to the defendant's house, in company with his cousin, Carlos Thurston, in the evening, and that Ella, Josephine Blanchard and Frank Sterling were there; that the defendant and his wife were not at home; that they had a dance during the evening; that Ella sat in his lap and unbuttoned his pants, and he felt of her person; that Carlos and Josephine went up stairs, taking a light, and were gone a short time; that after they came down, in about half an hour, Carlos took Ella and went into the back room, and was gone about ten minutes; that when they started off home, both girls went out with them and kissed them. He further testified that this was the only time he ever saw Ella, previous to this court.

Dora Blanchard testified that in the spring of 1864 she went to the defendant's to make a visit, in company with Eliza Downing, and found Ella on the floor with one Joel Adams, that Ella's clothes were up, and that Joel was on top of her.

There was no testimony which tended to show that either said Edmund Burke, Harlow J. Lee, Alonzo Avery, Wilbur N. Thurston, or Joel Adams, was the father of this child, or that either of them was with or saw said Ella at any time within the period when the child must have been begotten.

The defendant introduced one Flanders as a witness, who testified that, after the child was born, he asked Ella whose fault it was that the defendant and his wife had no children, and that she replied that she did n't know. To this testimony the plaintiff objected, but the court admitted the same, to which the plaintiff excepted.

The defendant introduced no evidence tending to show that Ella had intercourse with any other person within the period when the child must have been begotten, but claimed that, from Ella's admissions, she must have seen Carlos Thurston and Monroe Walbridge the night she left the defendant's house, although there was no testimony, aside from such admissions, that she did see either of them that night or the next morning; and the defendant claimed that the child might then have been begotten. The defendant also claimed that the child might have been begotten on the 4th day of July, on the occasion of a celebration at Strafford, at which Ella and her sister attended, going from their mother's on foot in the morning three or four miles to the village, and riding home in the evening with said Carlos Thurston and one Jefferson Walker from Strafford together, leaving Strafford about eleven o'clock in the evening of the 4th to go to Mr. Flanders's, in Sharon, a distance of about three miles; that Ella arrived at Mr. Flanders's about sunrise, but that before going there, not wishing to disturb Mr. Flanders's family, she went to her mother's, who lived a short distance from the road and about a mile from Mr. Flanders's, and arrived there about three o'clock in the morning; and that she said the reason why they were long on the road, was that they lost their way, the night being dark; al-

though Ella testified that nothing improper took place on this occasion, and there was no testimony tending to show the contrary. The defendant introduced evidence tending to show that the complainant's general reputation for truth and veracity is not good, and the plaintiff claimed that such testimony should be confined to her reputation before this controversy arose, and that whatever reputation in this respect she had acquired between that time and the time of trial, could not be received; but the court permitted the inquiry generally, coming down to the time of trial, to which the plaintiff excepted. It appeared in evidence that the complainant has not lived in the vicinity of the defendant's since she left his house in June, 1865, but has lived a part of the time at her mother's in Strafford, and a part of the time has worked out near her mother's, and a part of the time has lived with her uncle, in Canaan, N. H. The impeaching witnesses called by the defendant, mostly reside in the vicinity of the defendant's, and many of them stated that they had heard no reports against Ella's character for truth previous to her leaving the defendant's, but had heard such reports since, and some of them stated that they had heard no such reports until a short time previous to this trial. The reports previous to Ella's leaving the defendant's, were mostly in relation to two or three matters of difficulty and controversy which she had with a schoolmistress and another girl in the school district.

This prosecution was controlled and managed by the town of Sharon, where the complainant has her legal settlement, and the overseer of the poor filed his certificate for that purpose with the clerk of this court on the 18th day of January, 1866.

There was testimony in the case tending to prove that Ella stated to Mrs. Brown that, upon leaving Mr. Sterling's on the night of the 2d of June, she went to the barn of Mrs. Thurston, mother of Carlos Thurston, and remained in the barn until morning ; that she stopped at Mrs. Thurston's house and got breakfast for Carlos (his mother being absent from home, and the fact that she was absent being known to Ella before she left Sterling's), and that after breakfast sometime she started up the road in the direction of Mr. Roberts's and Mr. Rix's. Ella denied that such was

the fact and that she so stated. It also appeared in evidence that, in about a week or ten days after leaving Mr. Sterling's, Ella went to work in the family of Mr. Henry Flanders, in Strafford, who lived but a short distance from her mother's, and remained in his family, as a hired girl, for about seven weeks; that, after she had been there a few days, she had a discharge resembling her monthly turn; and the evidence on the part of the defendant tended to show that the discharge was very copious and profuse. That shortly after this she went to Strafford to attend the celebration of the 4th of July in that place, and in the night of that day, at about eleven o'clock, she was seen coming from the direction of the common in that village to the steps of the hotel alone, and soon a man came from the same direction, and after that, the same night, she rode home with Carlos Thurston and Jefferson Walker and her sister.

From the testimony in relation to efforts to procure an abortion, in connection with other evidence, it was claimed by the defendant, in argument to the jury, that there was design on the part of Ella to hasten the birth of the child, so as to bring it within the time in which the defendant might have begotten it, and that the birth was thus hastened, and that that testimony tended to contradict and discredit Ella and her mother as witnesses.

The court charged the jury fully and, amongst other things, that testimony as to admissions and statements made by Ella, was not merely evidence tending to discredit her by contradicting her, but was proper to be considered as evidence in chief bearing upon the main issue, and as tending to prove the facts themselves thus sworn to have been admitted and stated by her. To this the plaintiff excepted. The court also told the jury that the evidence tending to show acts of intercourse and improper familiarities of Ella with persons whom the evidence did not tend to show to have had intercourse with her within the time in which the child must have been begotten, was not to be considered by them, as it had no bearing on the question of the defendant's being the father of the child. Also, that the evidence as to attempts to procure an abortion, had no tendency to show that the defendant was not the father of the child, and was proper to be considered only as contradicting and tending to discredit Ella and

her mother. The plaintiff excepted to the use thus permitted to be made of that evidence. Verdict for the defendant.

*French & Johnson*, for the plaintiff.

The testimony as to pretended sexual intercourse, and acts tending to show improper familiarities, with Ella by others than the defendant, long before this child could have been begotten, was not admissible upon any principle ever recognized in this court. To permit such testimony would create separate and distinct issues having nothing to do with the guilt or innocence of the respondent, and would protract trials, and distract the minds of the jury. It does violence to all our ideas of a jury trial. The testimony must be confined to the *issue on trial*. *Thayer* v. *Davis*, 38 Vt., 163; *Morse* v. *Pineo*, 4 Vt., 281; *Spears* v. *Forrest*, 15 Vt., 435; *State* v. *Smith et al.*, 7 Vt., 141; *Commonwealth* v. *Churchill*, 11 Met., 538; *Jackson* v. *Lewis*, 13 Johns., 504. A party is not permitted to prove that a witness is a *notorious counterfeiter* to impeach his testimony. *Crane* v. *Thayer*, 18 Vt., 162; *Commonwealth* v. *Moore*, 3 Pick., 194; *C. & P. R. R. R. Co.* v. *Baxter*, 32 Vt., 805–814.

This case bears no analogy to that class of cases, where the attorney in good faith states that he intends to connect the testimony with other testimony which will make it material, but fails to do so. Here there was no such statement, and in no supposable state of the case could the evidence be proper or material. *Harris* v. *Holmes*, 30 Vt., 352; *State* v. *McDonnell*, 32 Vt., 491.

The fact that inquiries had been put to Ella on cross-examination, in relation to improper familiarities with certain persons, does not render this testimony competent for the purpose of contradicting her. The defendant was bound by her answers in this respect. *Stevens et al.* v. *Beach*, 12 Vt., 585.

The testimony of Dr. Whitcomb, that Ella applied to him for medicine to procure an abortion, November 25, 1865, and of Mrs. Brown, that Ella attempted to procure an abortion while living at her mother's, and that Ella told her that her mother sent her medicine for this purpose in August or September, 1865, was improperly received. It had no tendency to prove or disprove that the defendant was the father of the child.

The defendant had no right to ask Ella if such was not the fact, on cross-examination. *Sweet* v. *Sherman*, 21 Vt., 23.

The inquiry, if made to Ella on cross-examination, was clearly collateral and irrelevant, and the defendant had no right to introduce evidence to contradict her on this point. *Stevens et al.* v. *Beach*, 12 Vt., 585; *State* v. *Thibeau*, 30 Vt., 100; *Randolph* v. *Woodstock*, 35 Vt., 291; 1 Green. Ev., § 449.

This evidence was introduced and used by the defendant for general purposes of defense. The court, in their charge, limited it to contradicting Ella and her mother. It was error in the court to permit its use for any purpose. *Sargeant* v. *Sargeant et al.*, 18 Vt., 371; 1 Green. Ev., § 449; and cases cited above.

*Washburn & Marsh*, for the defendant.

Testimony which has a legitimate tendency to create a doubt as to the paternity of the child, is admissible. Hence, testimony that the woman had intercourse with other men at and about the time the child was begotten, has always been held admissible to rebut her testimony as to the defendant's being the father. *State* v. *Johnson*, 28 Vt., 518.

The testimony in this case tending to show that Ella knew that Carlos Thurston was at home and that his mother was absent the night she left Sterling's, and that she stayed upon the premises that night and got breakfast for him in the morning, proved that they had the means and opportunity for having intercourse, if they were so inclined. The defendant claims that such intercourse was then had. The subsequent conversation between Ella and Carlos as to her being pregnant, has a direct tendency to prove that such intercourse did take place. *Kimball* v. *Locke*, 31 Vt., 683; *Thayer* v. *Davis*, 38 Vt., 165.

Under the rule stated in these cases, the testimony of Wilbur N. Thurston was admissible, as tending to show previous intercourse between Carlos Thurston and Ella. *Norfolk* v. *Gaylord*, 28 Conn., 309.

The testimony of Edmund Burke, Harlow J. Lee, Alonzo Avery, and Dora Blanchard, had a legitimate tendency to satisfy the minds of the jury upon the same point. Although, standing

:alone, it might not be competent upon the issue, yet, when con-nected with the fact that Ella had full and free opportunity the night she left Sterling's, to have intercourse with Carlos Thurs-ton, and the circumstances tending to show her previous familiar-ity with him, it tends most strongly to the conclusion that she did not allow that opportunity to pass unimproved.

The question presented is not that decided in *Morse* v. *Pineo*, 4 Vt., 281, and *Spears* v. *Forrest*, 15 Vt., 435 ; that evidence of .reputation as a prostitute, is not admissible as an impeachment of the character for truth. The question here, is whether the *fact* .that a woman has had intercourse with others repeatedly, and ,even upon her own solicitation, has any tendency to prove that she had intercourse with one with whom she had been on terms ,of indecent familiarity, when she had full opportunity sought by herself, to have such intercourse. Would not the *fact* that a woman had been in the habit of free intercourse with men, have some tendency to prove her motive in going with a man to a house of ill fame? Wills's Cir. Ev., 25. *Kimball* v. *Locke*, 31 Vt., 685.

The case is within the reasoning of the court in *State* v. *Johnson*, 28 Vt., 512, and *State* v. *Reed*, 39 Vt., 417.

If the testimony was incompetent, without connecting it with other testimony, bearing upon the time when the child might have been begotten, the judgment should not be reversed, if the testi-mony was properly withdrawn from the consideration of the jury. *Harris* v. *Holmes*, 30 Vt., 355 ; *Kimball* v. *Locke*, 31 Vt., 687 ; *Northfield* v. *Plymouth*, 20 Vt., 591; *C. & P. R. R. R. Co.* v. *Baxter*, 32 Vt., 815.

The testimony in reference to the attempts at procuring an abortion, was admissible, in connection with other testimony in the case. The defendant claimed, and the testimony tended to prove, that the child might have been begotten on the night of the 4th of July. The testimony of Dr. Whitcomb upon this point, was clearly admissible.

There was testimony in the case tending to show that the birth .of the child was hastened by means used for that purpose. The . testimony of Dr. Whitcomb as to Ella's application for medicine, ;and the testimony of Mrs. Brown as to what she saw and heard

and what Ella told her in reference to an attempted abortion, had a direct connection with that testimony, and tended, with that, to prove that the child was begotten after she left Sterling's, and by some person other than the defendant. This testimony was, at least, competent to the extent to which the court allowed the jury to consider it, as contradicting and tending to discredit Ella and her mother. The testimony of Mr. Flanders had a legitimate tendency to contradict Ella as to the paternity of the child. If her testimony was true, she did know that it was not the fault of the defendant, that he had lived with his wife twenty years without having children. The ruling of the court as to the impeachment of the prosecutrix, was correct. Her present character was the point in issue. *Willard* v. *Goodenough*, 30 Vt., 393.

The testimony as to the admissions and statements made by Ella, was not merely evidence tending to contradict and discredit her, but evidence in chief bearing upon the main issue, and tending to prove the facts themselves sworn to have been admitted and stated by her. Gen. Sts., 493, § 12, § 13, § 14; *Sherman* v. *Johnson*, 20 Vt., 567 ; *Humphrey et ux.* v. *Kasson*, 26 Vt., 760 ; *Loomis et al.* v. *Loomis*, 26 Vt., 198.

The opinion of the court was delivered by

PECK, J. The evidence introduced on the part of the defense, tending to show sexual intercourse by the plaintiff with others than the defendant, and acts of indecent familiarity with them, tending, as was claimed, to show such intercourse, outside of the time within which, according to the course of nature, the child in question could have been begotten, was improperly admitted. Evidence of this character is limited to such acts within the time the child could have been begotten. This evidence was not rendered admissible by the inquiries as to such acts having been first made of the plaintiff on the stand, and her denial of them. The defendant had no right to make such inquiries, and, when made, the plaintiff had her election to answer or not, as she pleased. Her answering without objection does not give the defendant the right to introduce evidence to contradict her answers; not even for the purpose of impeaching or discrediting her testimony. The

defendant, having made the inquiries of her as to such collateral matter, must take such answers as she gives ; at least, he can not introduce evidence to contradict her in this respect. We understand this to be not only in accordance with the principles of evidence, but in conformity to the long and well settled practice in prosecutions for bastardy. In *Commonwealth* v. *Moore*, 3 Pick., 194, which was a prosecution for bastardy, such evidence was offered on the part of the defense, and claimed to be admissible, not only as tending to impeach the credit of the mother as a witness, but also as tending to show that the defendant was not the father of the child, and it was held to be clearly inadmissible.

The error is not cured by the direction of the court to the jury in the charge, not to consider it, as it had no tendency to show that the defendant was not the father of the child. It had already had its influence on the minds of the jury, and it would be extremely improbable, if not impossible, that the jury could know what their conviction would have been on the material fact, had this evidence not been in the case. This point was decided in *Conn. & Pass. R. R. R. Co.* v. *Baxter*, 32 Vt., 805, where the reasons are well assigned. It was proper for the · court to give such instructions after they had discovered the error, because it might have some influence in removing the impression created by that evidence, and had the verdict been the other way, the error would have become immaterial. But as the verdict was for the defendant, the error is not cured.

The objection to the defendant's offer to show by Dr. Whitcomb that the plaintiff applied to him for medicine to procure an abortion, and to show by Mrs. Brown that the plaintiff attempted to procure an abortion and what the plaintiff said on that subject, ought to have been sustained, and the evidence excluded. And the court erred in charging the jury that it was evidence tending to contradict and discredit the plaintiff and her mother. This was decided in *Sweet* v. *Sherman*, 21 Vt., 23. In that case, the defendant ·offered to prove such fact both by inquiring of the plaintiff on cross-examination, and by a physician introduced by the defendant, and it was held that it was properly excluded. In the opinion in that case it is said, that it had no tendency to prove

whether the defendant was the father of the child, and that it could not be claimed as proper matter by way of impeaching the plaintiff as a witness. The fact of an attempt to procure an abortion being wholly immaterial to the issue on trial, if the defendant chooses to make such inquiry on cross-examination, and the witness chooses to answer, the defendant must be content with such answer as he gets.

The indecent question put to the plaintiff by Mr. Flanders and her reply, should have been excluded by the court. The plaintiff would naturally repel such a question in the shortest possible way, and her reply furnishes no just ground of inference against her.

But it is insisted by the counsel of the defendant, that the evidence of Wilbur N. Thurston as to what transpired at the defendant's house in February, 1865, was properly admitted. This transaction was not within the time the child could have been begotten, as the child was born March 4, 1866. If actual intercourse with others than the defendant, outside of the time the child could have been begotten, is inadmissible, clearly indecent familiarity with the witness, outside of that time, must be incompetent. It is claimed that the evidence of this witness tends to prove sexual intercourse between the plaintiff and Carlos Thurston on that occasion. The deportment between Carlos Thurston and the plaintiff to which this witness testified, claimed to be suspicious, is that, in the evening, those two left the room where the rest of the company were, and went into the back room, and were gone about ten minutes. Divesting the case of the inadmissible evidence with which it was incumbered, this circumstance can hardly be said to be any evidence of sexual intercourse on that occasion. But if any evidence at all, the presumption must be extremely slight. But in any view of it, not being within the time the child could have been begotten, it was of itself alone incompetent evidence. But it is claimed that this evidence of Carlos Thurston and the plaintiff going into the other room together, is rendered admissible by other evidence in the case. It appears that the plaintiff had testified that she took her bundle of clothes between two and three o'clock in the morning June 2,

1865, and left the defendant's house where she had resided since six years old, and started for her mother's some six or eight miles from there, and on her way passed by Thurston's where Carlos Thurston lived. There was evidence that she then knew that Mrs. Thurston was absent from home. It is insisted that the testi- mony of Mrs. Brown, to the effect that the plaintiff told her that, after leaving the defendant's house on that occasion, she went to Mrs. Thurston's barn and staid till morning, and stopped at Mrs. Thurston's house and got breakfast for Carlos Thurston (which was denied by the plaintiff), tends to show that the child may have been begotten by Carlos Thurston on that occasion, and, also, that what was said at Mr. Flanders's between Carlos Thurston and the plaintiff a few weeks after she left the defendant's house, tends to show the same. Whatever tendency this evidence had for this purpose, the defendant could have the benefit of. If it were proved that the plaintiff had intercourse with Carlos Thurston on the morning of that 2d of June, it would not necessarily show that the paternity of the child was not imputable to the defend- ant; but it would be competent evidence, as it would tend to render it uncertain which was the father of the child. It is claimed on the part of the defense, that, in order to confirm this circumstantial evidence of intercourse with Carlos Thurston on the 2d of June, the evidence of Wilbur N. Thurston as to the plaintiff and Carlos Thurston going into a room together, is ad- missible, although previous to the time when the child must have been begotten. *Thayer* v. *Davis*, 38 Vt., 163, is relied on in sup- port of this proposition. In that case, the plaintiff, according to her testimony, was but fourteen years old when the child was begotten; she had not seen the defendant for a year or more before the child was begotten; and the further fact appeared by the exceptions in that case (though not appearing in the report), that the plaintiff testified that the child was begotten while she was riding home with the defendant in the evening from a concert and dance. The short time they were alone together, the slight acquaintance she apparently had had with the defendant, as her testimony then stood, might well have been urged against the probability of the intercourse having taken place under the cir-

cumstances and on the occasion testified to by her. She was then allowed, against objection, to state that, when she was eleven years old, she and the defendant lived together in the same family, and that he then had connection with her. But the supreme court, in affirming the judgment, do not put it on the peculiar circumstances of that case, but upon the broader·ground that the previous familiarity or intimacy existing between the parties, is a circumstance admissible as bearing on the probability of the alleged sexual intercourse which is the subject of the prosecution. This decision has no bearing in favor of the admissibility of Wilbur N. Thurston's testimony as to the plaintiff's conduct with him, for it is not claimed that he ever had connection with her. Nor was what he testified transpired on that occasion between the plaintiff and Carlos Thurston, admissible for any such purpose as the defendant's counsel seek to use it for; that is, to infer from it that they had sexual intercourse there, and then on that presumption base another presumption, that they had intercourse on the 2d of June. It is presumption based on presumption, and that, too, resting on an original basis too slight to justify any such conclusion. The fact which is to form the basis of a presumption, ought to be clearly proved. In *Thayer* v. *Davis*, the sexual intercourse was testified to directly. We do not say but that so far as anything transpired between the plaintiff and Carlos Thurston on that occasion, it might have been proper as evidence to show that they were well acquainted with each other, if that was in dispute. But the plaintiff herself had testified that she was well acquainted with him. If the evidence of Wilbur.N. Thurston had been confined simply to what took place on that occasion between the plaintiff and Carlos Thurston, and no unwarrantable use had been made of it, it might not have been error; but as the case is, the ruling of the court was erroneous.

It is claimed by the plaintiff's counsel, that declarations made by the plaintiff after the overseer filed his certificate and took control of the prosecution, were not evidence in chief, but only evidence tending to discredit the testimony of the plaintiff, and that the court erred in charging that such declarations were evidence in chief. It is claimed that, after the town assumed control

·of the suit, the plaintiff in this respect was a mere witness, or but a nominal party having no interest.   It is only where the town is charged or likely to be charged with the support of the child, that the statute authorizes the town to assume the control of the suit.   It is true that, in such case, the town indemnifies the mother from all future costs; but the statute provides that the town shall apply all moneys recovered, exclusive of costs, to the support of the child.   The town is bound to appropriate the fund to the same purpose that the duty of the mother would require her to apply it to.   It is true the mother can not settle the suit without the consent of the overseer of the town, after he assumes control of it; but it is also provided that the overseer can not compromise the suit without the consent and approbation of such woman.   The ultimate use and appropriation of the fund remaining the same, the woman can not be regarded as becoming a mere nominal party without interest, by the town's assuming the control of the prosecution.   We think, therefore, there was no error in treating the declarations of the plaintiff in relation to material facts in the case, as evidence in chief.   Where there is any reason to suppose the woman is acting under the influence or in the interest of the defendant, it is a matter to be considered by the jury in judging of the weight that should be given to such declarations as evidence.   Such declarations are never to be regarded as conclusive.

The plaintiff also excepted to the introduction of certain ·evidence to impeach the general character of the plaintiff for truth.   It appears by the case that the plaintiff has not lived in the vicinity of the defendant's since she left his house in June, 1865; that the impeaching witnesses introduced by the defendant, mostly reside in the vicinity of the defendant's; and many of them stated that they had heard no reports against her character for truth previous to her leaving the defendant's, but had heard such reports since; and some of them stated they had heard no such reports until a short time previous to the trial.   And it further appears that the reports previous to her leaving the defendant's, were mostly in relation to two or three matters of difficulty and controversy which she had with a schoolmistress and another

girl in the school district. The exception is to the admission of that part of the impeaching testimony relating to the plaintiff's reputation since this controversy arose. The reasons urged by counsel against the admissibility of this evidence, based on the facts appearing in the case, are certainly forcible, and go far to detract from the weight and damaging effect of such testimony; especially under the mode of impeaching a witness in this state, by proof of general character as to truth, and that character made up solely by what other people say out of court. But we can not say that such evidence is inadmissible. It is competent, but should be guarded by proper instructions to the jury as to the force and weight to be given to it. It is to be presumed the court accompanied it with proper instructions. As to this exception we find no error.

Judgment reversed, and new trial granted.