\* CHARLES N. DAVENPORT *v*. JOHN G. SHANTS & CO., SHERMAN
ROBINSON, HENRY W. SCOTT, LOREN F. CROZIER, AND
HENRY G. ROOT.

[IN CHANCERY.]

*Conditional Sale. Mortgage. Machinery. Fixture.*

Where a person sells machinery under a condition that it shall remain the property of
the vendor until the price is paid, but it is of such character that when it is put in its
place in a mill it would pass under a mortgage of the real estate, and the vendor had
reason to suppose it would be, and it was, so placed, before it was paid for : *held* .that
the equity of a subsequent mortgagee, without notice of the vendor's claim and in re-
liance upon the vendee's title being absolute, is paramount to that of the conditional
vendor.

But for machinery so sold and delivered, and being in the yard of the mill but not ac-
tually placed in the mill at the time of the execution of the mortgage, but put in af-
terwards, the right of the conditional vendor is paramount to that of the mortgagee.
But the mortgagee would hold it as against the mortgagor.

Machinery consisting of a circular saw-mill and saw, belts to drive the saw, water-wheel-
gears, shaft and box to the same, and drum flanges, all put in its place in a saw-mill,
pass under a mortgage of the real estate, as between the mortgagor and mortgagee.

PETITION for foreclosure of a mortgage.   The petition sets forth
a mortgage, executed by John. G. Shants & Co., to the petitioner,
October 13th, 1866, of a mill and factory and tannery in Sears-
burg, with 200 acres of land, and three dwelling-houses thereon.
" And also the factory, then in process of erection on the site of
said Searsburg tannery, with the saw-mill, water-wheels, and all
the machinery and shafting in said factory," to secure a note of
$1000.   The petition then sets forth the execution by Shants &
Co., and the purchase by the petitioner, of another mortgage on
the same premises, except the machinery, and also sets forth that
the defendants, other than Shants & Co., claim an interest in said
property.

The petition was taken as confessed by all the defendants, ex-
cept Henry G. Root, who appeared and answered, admitting the
facts set forth in the petition, or not denying them, except as fol-
lows :

That between the 3d day of August and the 27th day of Octo-
ber, 1866, this defendant, by his agent, Olin Scott, sold to the said

John G. Shants & Co., various articles of machinery, consisting of a circular saw-mill and saw, and the belts to drive the same; the gears on two water-wheels; the upper piece of a large water-wheel shaft and box to the same; the counter-shafts to two water-wheels; the drum flanges and boxes to the said counter-shafts; and one extra saw collar; upon the condition that said machinery should be and remain the property of this defendant until the same should be paid for by said John G. Shants & Co.; the whole of said machinery amounting in value to the sum of $919.86, which they agreed to pay this defendant for the same. All of which machinery, excepting the gears and upper shaft to the large water-wheel, and the counter-shaft and boxes to the same, were in place in the factory mentioned in said petition at the time of the alleged execution of the mortgages set forth in said petition, and the said excepted articles have, since said time, been placed in said factory. That there has been paid to this defendant, towards the purchase of said machinery, the sum of $191 only; the remainder being still due, with the interest thereon.

And this defendant claims and insists that his title to said machinery is paramount to that of the said John G. Shants & Co., and to that of the petitioner, and that the petitioner has no right to a foreclosure as to said machinery, or any part thereof, against the defendant.

The petitioner replied, saying, that he never at any time, until long after the execution of the several mortgages sought to be foreclosed by this petition, had any knowledge or notice actual or constructive of any contract or understanding between the defendant and the said John G. Shants & Co., by which the defendant had or claimed to have any right or claim to the saw-mill, water-wheels, and the machinery and shafting in the factory described in said mortgage; that he did, on the 13th day of October, 1866, in good faith, and relying upon the fact that no claims, liens or incumbrances existed of record upon any of the property or estate described in said mortgage, and upon the promise and assurance of both the members of said firm of John G. Shants & Co. that none existed in fact, loan to said firm, the full sum of one thousand dollars, and took said mortgage in good faith to secure the payment thereof; that if it is true that the defendant did reserve such a lien upon the several articles named in his answer to said petition for foreclosure, as is in said answer stated, yet it is also true that the defendant well knew the purpose for which John G. Shants & Co. purchased the same, and the defendant then and afterwards consented that they might attach and annex said water-wheels, saw-mill, shafting and machinery to their freehold, and

make the same a part of and appurtenant to said freehold, and did by his agents and workmen assist the said John G. Shants & Co. in so doing.    And insists that the lien created by his said mortgage is paramount to any lien or claim of the defendant to the sawmill, water-wheels, machinery and shafting in said factory.

### STIPULATION.

It is hereby stipulated that this cause shall stand for hearing upon petition, answer, replication, affidavits of Olin Scott and H. W. Scott, statement of facts, and notes and mortgages set forth in the petition.    The facts stated in the answer are admitted to be true, excepting as varied or qualified by the replication in connection with the affidavits and statement of facts.    The facts stated in the replication are admitted to be true, excepting as varied or qualified by the affidavits and statement of facts, and excepting that the averment respecting annexing " to the freehold of the said John G. Shants & Co., and make the same a part of, and appurtenant to said freehold," is not to be taken as an averment of facts, but as a conclusion of law.    The facts stated in the affidavits and statement are admitted to be true.

### AFFIDAVITS.

Olin Scott, on oath, says, I was at the mill of John G. Schantz & Co., in Searsburgh, in the fall or winter of 1866-7, for the purpose of getting pay for the job which I had done for them on account of H. G. Root, and looking around, I found that said John G. Schantz & Co. had built a wooden wheel which did not answer their purpose, and they were altering it.    Without taking off my overcoat or gloves, I suggested something about cutting or enlarging a spout hole in the flume and nothing more, and charged nothing for my advice.    I never had anything to do with putting in the machinery which I furnished said Schantz & Co., on account of said Root, and none of said Root's hands, so far as I know, had any thing to do with putting said machinery into the mill of said Schantz & Co.

Henry W. Scott, on oath, says :    In 1866, I furnished an iron wheel for John G. Schantz & Co., and set it in place in the mill of said Schantz & Co., in Searsburgh, working at it myself.    I did not in any way assist in putting in the machinery furnished said Schantz & Co. by Henry G. Root; the machinery furnished by said Root was not delivered at said mill until after I had finished my job and had set said iron wheel.    I had no interest in said Root's job and he had none in mine.

STATEMENT OF FACTS.

At the time the mortgage was executed, there was in Shants' factory a flume, with a water-wheel attached outside of the flume, which water-wheel was a wooden centre-vent wheel, with wooden vertical shaft, having cast-iron gudgeons and a bevel-gear attached. The bevel-gear on said water-wheel drove another bevel-gear on the counter-shaft. This counter-shaft had a pair of flanges attached, upon which flanges a wooden pulley was built, which pulley drove the saw-mill. The gudgeons, gears, shaft-boxes to same, and flanges were furnished by H. G. Root, and are now claimed by him. Within the flume aforesaid was an iron turbine water-wheel which was furnished and put in place by H. W. Scott, and which had a short shaft. There was also in the factory at the time aforesaid a circular saw-mill, with carriage and all fixtures to the same; also a 48 inch circular saw, together with all the necessary belts to drive the saw-mill. The whole was in running order, the saw-mill being driven by the wooden centre-vent water-wheel first named. The saw-mill, carriage, and fixtures, and the saw and belts were furnished by the said Root, and are now claimed by him. There were on the yard at the same time two bevel-gears, one piece cast-iron water-wheel shaft, with boxes, one counter-shaft, with boxes and flanges. The last named iron work was all furnished by the said Root, and are claimed by him. The last named machinery was afterwards put into the factory by coupling the cast-iron shaft to the iron turbine water-wheel shaft and attaching to the aforesaid cast-iron shaft the gears and counter-shaft, with the flanges and boxes belonging to the same, and were built for that purpose. The turbine water-wheel and shaft are in the lower wheel-pit. The shaft coupled to the water-wheel, with the gears, counter-shaft, boxes and flanges, are in the basement-room over the wheel-pit and under the principal floor, *on which floor* the saw-mill is placed. The upper end of the shaft, which is coupled to the water-wheel, and the counter-shaft, are supported and attached to a frame-work by bolts, which frame-work is attached to the basement floor-timbers, and to the floor-timbers of the floor above by means of tenons, mortices and keys. The wooden water-wheel has a wooden shaft extending from the wheel-pit up into the basement room, where the gear is attached, and has gearing and counter-shaft, attached in the manner similar to the first named counter-shaft, and supported in a similar manner. The saw-mill machinery, consisting of saw-arbor and boxes, with saw, the feed-works, gig-works, log-rolls and fixtures, are all attached to a wooden frame, which frame, with all the machinery attached, is set on floor-timbers and fastened by means of two

bolts, extending through the floor-timbers and frame aforesaid. The carriage to the saw-mill runs upon small iron rollers, which rest upon small iron chairs, which chairs are secured to a stick of timber that is laid down on the floor-timbers for that purpose. The chairs are screwed down with wood-screws. The rollers are not attached to the chairs, but rest on them. All the machinery mentioned above, including the water-wheels and appendages, were placed in the factory, which is a large two-story building, 33 x 90 feet, by John G. Shants & Co., for the purpose of prosecuting the business of manufacturing lumber, chair stock, &c., and is connected with and attached to the building, as machinery of that character usually is. So much of the property herein described as was furnished by H. W. Scott is not in controversy in this suit.

At the September term, 1868, decree, *pro forma*, foreclosing mortgage against all defendants, except Henry G. Root, and dismissing the petition as to Root, with costs. Appeal by petitioner.

*H. H. Wheeler* and *Charles N. Davenport*, for the petitioner, insisted that the machinery in question lost its identity as personal property, and would pass to any owner of the freehold, who was not a wrong-doer, and cited Justinian 2, Tit. 1, § 30; Year Book 5, Hen. VII, 15; Brooke's Abr., Tit. Prop., pl. 23; 2 Black. Com., 404; 2 Kent Com., 361; *Cross* v. *Marston*, 17 Vt., 533; *White* v. *Twitchell*, 25 Vt., 620; *Powers* v. *Dennison*, 30 Vt., 752; 1 Washburn, Real Prop., pp. 3, 542; 2 Kent, 261; 1 Leading Cases in Equity, 360-361; *Davis et al.* v. *Bradley et al.*, 24 Vt., 55; *Winslow* v. *Ins. Co.*, 4 Metcalf, 306; *Harris* v. *Haynes*, 34 Vt., 220; 2 Smith, L. C., 211-212, *et. seq.*

——————, for the defendant.

The opinion of the court was delivered by

PECK, J. The bill having been taken as confessed as to all the defendants except Henry G. Root, and he alone defending, the only question is as to the right of the orator, under his mortgage from Shants & Co., to that portion of the property sold conditionally by Root to the said mortgagors.

The bill, and answer of Root, in connection with the written stipulation of the parties on file, leave no dispute as to the material

facts in the case, and no time need be spent in repeating the facts thus agreed.

It must be regarded as settled as a general rule in this state, that a party may sell and deliver personal property, under a condition that it shall remain the property of the vendor until the price is paid; and that under such contract, the title will remain in the vendor until the condition is complied with, both as between the vendor and such conditional vendee, and also as between the original vendor and a *bona fide* purchaser without notice from such conditional vendee. The only question is whether the facts of this case take it out of the general rule.

The proposition of the counsel of the defendant Root is, that the whole property sold conditionally by Root to Shants & Co. was personal property as well after as before the sale, and can not properly be claimed as fixtures or as parts of the realty. But we think as between mortgagor and mortgagee, if the title of the mortgagor were absolute, the defendant's proposition is not correct; and that under the recent decisions in this state, on being put in place in the mill and factory, as shown in this case, it became so far annexed to the realty as to pass under a mortgage of the real estate. But still the question remains as between the mortgagee under his mortgage, and the original owner under his conditional sale to the mortgagor, which has the paramount right.

First, as to that portion of the property which had been put in place in the mill and factory by the mortgagors after they thus purchased it of Root, and which was in the building and thus annexed at the time the orator took his mortgage: As to this property, the orator, as it appears, having advanced his money and taken his mortgage in good faith, without notice of any lien or encumbrance upon it, and from its condition, having reason to suppose that the mortgagors' title to this property in question was the same as his title to the realty, to which it was annexed, and of which it was apparently parcel, seems to have a strong equity in his favor. While on the other hand the defendant Root, the unpaid vendor, who endeavored to secure himself, by stipulation in the sale that he should hold the title till paid, ought not to be deprived of this security without some substantial reason. But

the defendant Root must have understood, when he sold the property to Shants & Co., that they intended to put the property to use in advance of the payment of the price ; and from the kind and nature of the property, he must have expected that in its use it necessarily must be annexed to the realty, substantially in the manner in which it was, and thereby become apparently parcel of the realty. What he knew or had reason to suppose and did suppose was to be done with the property, he must be taken to have consented to, as he did not object. Root therefore having, by implication at least, if not expressly, consented that the property might be incorporated with the realty of Shants & Co. in the manner it was, and they thereby become clothed with the apparent title as incident to their record title to the real estate, whereby the mortgagee was misled and induced to part with his money on the credit of the property, the equity of the mortgagee is paramount to that of the conditional vendor. Justice and equity, as well as sound policy, require this limit to the rights of a conditional vendor as between him and an innocent purchaser or mortgagee of real estate without notice, who advances his money on the faith of a perfect title.

But as to that portion of the property mentioned in the answer of the defendant Root, and in the agreed statement of facts on file, which had not been placed in the mill or factory at the time of the execution of the mortgage to the orator, but was in the yard and put in place in the factory or mill afterwards, the right of the defendant Root is paramount to the right of the orator. That, not having been annexed to the realty at the date of the mortgage, would not pass as incident to the realty ; and the mortgage did not divest Root of his title. It having been placed in the building by the mortgagors after the execution of the mortgage, the mortgagee might hold it as against them, but not as against Root, the conditional vendor. As to this portion of the property the mortgagee was not misled, and advanced nothing on the faith of it.

The decree of the court of chancery is reversed, and cause remanded for a decree of foreclosure for orator against all the defendants as to all the property except that defendant Root have

a right to that portion of the property, or the value thereof, not in place in the factory or mill at the time of the execution of the mortgage to the orator, but put in afterwards,—the orator having his election to pay to Root the value of it, or have it excepted in the decree so far as Root is concerned, with liberty to Root to remove it within such reasonable time as the court of chancery shall fix for that purpose.