## Hope S. Paine, admr., *vs.* Leonard McDowell and M. E. Tucker.

May Term, 1898.

Present: Taft, Rowell, Tyler, Munson, Start and Thompson, JJ.

Opinion filed October 3, 1898.

*Transaction Equivalent to Deed and Mortgage.*—By a written agreement between Paine and McDowell, it was recited that Paine was the owner of the lot in question, and had bargained it to McDowell, and that McDowell had given Paine his notes therefor, and provided that when the notes were paid Paine should quit claim the farm to McDowell. *Held*, that the transaction was equivalent to a deed and mortgage back, and that McDowell having taken possession under the contract and never surrendered it, could not, nor could those claiming under him, dispute Paine's title, as by asserting that the deed to Paine from a third party, being only a quitclaim, was not evidence of title, or that the last named deed was given while McDowell was in adverse possession.

*Witness; Objection Waived.*—The oratrix called the defendant McDowell as a witness and proved by him without objection the making of the said contract with Paine, who had since deceased. *Held*, that she thereby waived her right to object to him for incompetency when subsequently called by the other side.

*Trade Fixtures.*—The doctrine of trade fixtures applies only as between landlord and tenant.

*Fixtures; Exception in favor of Conditional Vendor.*—As between mortgagor and mortgagee, in all jurisdictions where the mortgage conveys title, it is the general rule that all fixtures are a part of the land and go with it; but we have made an exception in favor of the conditional vendor of chattels sold to the mortgagor and by him annexed after the execution of the mortgage upon the land; and the same doctrine should operate in favor of one who does not sell the fixtures at all, but merely annexes them under an agreement with the mortgagor in possession that they may be removed at the will of the owner,—especially where, as in the case at bar, they can be removed and leave the mortgagee's security as good as it was before the annexation.

*Chattels Annexed under Agreement with Mortgagor in Possession.*—After the death of the intestate Paine and the appointment of the oratrix as his administratrix, and before the erection of the buildings in question was commenced, which was in 1893, the defendant Tucker, owning much timber land near by, acting in good faith, supposing the defendant McDowell owned the lot subject to mortgage and had a right to lease it, agreed with him for the use of so much thereof as might be necessary for the erection of a mill thereon, and for yard room and roads to be used in connection therewith in his lumber business, at and for a specified yearly rent as long as the mill should be used, and for a right to remove the buildings and machinery at the end of the term. That fall and winter Tucker built a building on a corner of the lot that adjoined two lots of his, and put into it a sawmill, a dressing-mill, and other machinery, and in 1895 added a box factory and shed and more machinery, all, including the letting by McDowell, being done with the full knowledge of, and without objection by the oratrix, and with no intention on the part of Tucker to improve the real estate. *Held*, that the erections and machinery never became fixtures, but retained their character as chattels as to the oratrix no less than as to McDowell and that Tucker had the right to remove them.

CHANCERY. Heard upon pleadings, master's report, and exceptions thereto, at the February term, 1898, Orleans county, before *Ross*, Chancellor, who sustained the exception to the testimony of McDowell on the subject of payments, and disallowed such payments, and rendered a decree of foreclosure against McDowell for the amount due, and against Tucker, also, but allowing him, under his cross-bill, to remove certain of the property, not including the buildings, boiler, engines and main shaftings. The defendant Tucker appealed.

*Bates, May & Simonds* for the defendant.

*John Young* for the oratrix.

ROWELL, J.   This is a petition to foreclose the equity of redemption arising under a contract of purchase of a farm consisting of a lot of land in Eden and a lot in Lowell.

The master finds that on August 13, 1878, the intestate owned the lot in Lowell by virtue of a warranty deed thereof from Willard Fuller to Samuel McDowell, dated January 10, 1878, duly executed and recorded, and of a quitclaim deed thereof from the said Samuel to him, dated the 13th of said August, duly executed and recorded.   It appears that the defendant Leonard McDowell lived on said farm before and at those times, and has lived there ever since.

On December 21, 1880, the intestate and the defendant McDowell entered into a written agreement, which recited that the intestate then owned said farm and had bargained it to said McDowell, and that McDowell had given him his certain notes and obligations therefor, and provided that if said notes and obligations were paid according to their tenor, and all other legal demands and accounts that the intestate might hold against said McDowell, and the balance due to said Fuller on a mortgage of the Lowell lot, the intestate would quitclaim the farm to McDowell.

This contract gave McDowell an equity of redemption in the premises, and made the transaction in legal effect practically the same as a deed and mortgage back; and as McDowell took possession under the contract and has never surrendered it, neither he nor those claiming under him can dispute the intestate's title, and therefore, as the defendant Tucker claims under McDowell, the objection that the quitclaim deed from Samuel McDowell to the intestate was not of itself, nothing more appearing, evidence of title, can avail nothing, nor can the further objection that said deed passed no title as to the defendant McDowell because

he was then in adverse possession. And it may be remarked that it does not appear that his possession was ever adverse to Samuel McDowell.

The oratrix called the defendant McDowell as a witness, and proved by him without objection the making of said contract and the execution of the notes thereby secured. McDowell was afterwards allowed to testify on behalf of the defendants, among other things, to the making of certain unindorsed payments, which the master found on his testimony alone, and which, on objection that he was incompetent, as the other party to the contract was dead, the court disallowed. The oratrix now concedes that this was error, for that by using him as a witness herself, she admitted his competency, or, rather, waived her right to object to him for incompetency when subsequently called by the other side, according to *Linsley* v. *Lovely*, 26 Vt. 123, 133, cited approvingly in *State* v. *Slack*, 69 Vt. at page 492.

After the death of the intestate and the appointment of the oratrix and before the erection of the buildings in question was commenced, which was in the fall of 1893, the defendant Tucker, owning much timber land near by, acting in good faith, supposing that the defendant McDowell owned the lot in Lowell subject to mortgage and had a right to lease it, agreed with him for the use of so much thereof as was or might be necessary for the erection of a mill thereon and for yard room and roads to be used in connection therewith in his lumber business, at and for a yearly rent of five dollars as long as the mill was used. That fall and winter Tucker built a building on a corner of said lot that adjoined two lots of his, and put into it a sawmill, a dressing-mill, and other machinery, and in 1895 he added to the building a box-factory and a shed, and put in more machinery.

The value of the whole lot does not exceed $300. The buildings are worth $1000, and the machinery therein, $5000. Tucker did not purpose to enhance the value of the

lot by his outlay, but only to provide means for cutting out the timber on his Lowell lot, which he thought would take about six years, and intended, when that was done, to remove the buildings and the machinery to his Eden lot; and the agreement between him and McDowell was that he might do that.

The master finds that the oratrix knew of the letting of the land to Tucker for the purpose for which it was used about the time the buildings were being built, but made no objection thereto. Tucker knew that the lot was under mortgage, and was told that the estate held it; and besides, the records were constructive notice to him that the estate had a quitclaim deed of the land; so he was laboring under no mistake as to the legal quality of McDowell's title.

The oratrix claims that the buildings and the machinery therein are so attached to the land as to become a part thereof as between her and Tucker, and that therefore he has no right to remove them; and she forbade him when he sought to do so before filing his cross-bill.

Tucker claims, on the other hand, that as under his contract with McDowell, who was in possession, he had the right of removal, the erections and machinery never became fixtures, but retain their character of chattels as to the oratrix as well as to McDowell, and that therefore he has the right to remove them as against both; and besides, he invokes the doctrine of trade fixtures. The doctrine of trade fixtures applies only between landlord and tenant, and as Tucker is not tenant to the oratrix, it does not apply as to her. *Fisher* v. *Dixon*, 12 Cl. & F. 312.

But the other claim we think is well founded. It is true that as between the estate and McDowell, all fixtures are a part of the land and go with it. This is the general rule between mortgagor and mortgagee in all jurisdictions where a mortgage conveys title; and in some of them, notably Massachusetts, no exception to the rule is made in favor of third persons, such as conditional vendors and

chattel mortgagees, although the annexations are made after the execution of the mortgage of the land, for they say that the mortgagor cannot bind the mortgagee without his consent by an agreement that the annexations may be removed in a certain event.  *Clary* v. *Owen*, 15 Gray 522; *Hunt* v. *Bay State Iron Co.*, 97 Mass. 279; *Meagher* v. *Hayes*, 152 Mass. 228: 23 Am. St. Rep. 819.

But we have made an exception in favor of conditional vendors of chattels sold to the mortgagor and by him annexed after the execution of the mortgage of the land, and held that they do not become fixtures as between the conditional vendor and the prior mortgagee, but retain their identity and character as chattels, and that the vendor's right thereto is superior to that of the mortgagee, and may be asserted against him; and this is put upon the ground that the mortgagee has parted with nothing on the faith of the annexations being a part of the realty, and therefore has no reason to complain.  *Davenport* v. *Shants*, 43 Vt. 546; *Buzzell* v. *Cummings*, 61 Vt. 213, 218; *Page* v. *Edwards*, 64 Vt. 124.

This exception, carried to its logical result, exempts the annexations in question from the mortgage, for it makes no difference whether the annexations are sold conditionally or not sold at all.  The same reason exists in both cases for treating them as chattels between the mortgagee and the owner, namely, that the mortgagee is not misled by the annexations, and parts with nothing on the faith of them, and therefore does not stand as a *bona-fide* purchaser; and as to McDowell, the right of removal certainly exists by reason of his agreement, and he could not defeat that right even by a revocation of his license.  *Barnes* v. *Barnes*, 6 Vt. 388.

This doctrine is highly equitable when, as here, the annexations can be removed and leave the realty as good security as though they had not been made at all.  If this

*3*

could not be done, the right to remove might not exist as against the mortgagee.

And this is the doctrine of many of the states, though in some of them a mortgage is not a conveyance but a mere security. Thus, in *Campbell* v. *Roddy*, 44 N. J. Eq. 244: 6 Am. St. Rep. 889, 895, it is said to be difficult to perceive any equitable ground on which the property of another that the mortgagor annexes to the mortgaged premises should inure to the benefit of a prior mortgagee; that as long as he is secured the full amount of the indemnity he took, he has no ground of complaint; that it is not inequitable to him, but highly equitable to the owner of the chattel to protect him as far as it will not diminish the original security of the mortgagee; that as between the mortgagor and the mortgagee, the latter is entitled to all annexations that the former makes of his own property, but that he is not entitled to the property of others. *Merchants National Bank* v. *Stanton*, 55 Minn. 211: 43 Am. St. Rep. 491, and *Binkley* v. *Forkner*, 117 Ind. 176: 3 L. R. A. 33, are to the same effect, and well considered. See note to *Muir & McDonald* v. *Jones*, 19 L. R. A. 444, and *German Savings & Loan Soc.* v. *Weber*, 16 Wash. 95: 47 Pac. Rep. 224.

The New York cases usually cited as supporting this doctrine of a broader equity do not sustain it, as in most if not all of them the mortgagees were parties to the agreement; and *McFadden* v. *Allen*, 19 L. R. A. 446: 134 N. Y. 489, is against the doctrine.

*Preston* v. *Briggs*, 16 Vt. 124, may also be thought to be opposed to it, though there the title had come to the plaintiff through several mesne conveyances after foreclosure and writ of possession executed. The case was this: A mortgagor let his son build a barn on the mortgaged premises after condition broken and pending a suit to foreclose, of which the son had notice. Nearly nine years after the equity of redemption expired, the grantee of the son removed the barn and the plaintiff brought trespass

therefor.  The court said that as between the mortgagor and his son it might well be said that the son had a right to remove the barn when he left the premises, and perhaps within a reasonable time thereafter, but that that right was certainly lost by the lapse of the statutory period of limitations, but that the case was not so favorable for the defendant as though his claim was made against one standing in the right of the mortgagor, for the plaintiff stood in the right of the mortgagee, and the barn having been built after condition broken and pending suit to foreclose, the one erecting it did so at his peril; that the record of the mortgage and the pendency of the suit were full notice to him that whatever structures or even fixtures he put upon the land by the permission of the mortgagor would pass to the mortgagee unless the premises were redeemed; that the case stood the same as though the mortgagor himself had built the barn, and that on both grounds the rights of the plaintiff were superior.  If this case can be said to favor the oratrix's claim, the answer is that *Davenport* v. *Shants* and the cases that have followed it have engrafted an exception upon the rule there applied, and that this case comes within that exception.

*Kendall* v. *Tracy*, 64 Vt. 522, is not in conflict with *Davenport* v. *Shants*, for there the defendants built their mill upon a piece of the mortgaged premises that they bought of the mortgagor, so they stood in the shoes of the mortgagor in adding structures, which were intended to be permanent and to enhance the value of the realty.

While they hold in England in cases of this kind that the fixtures cannot be removed without the assent of the mortgagee, yet they find his assent in the mere fact that he allows the mortgagor to remain in possession and deal with the property.  *Sanders* v. *Davis*, L. R. 15 Q. B. D. 218; *Cumberland Union Banking Co.* v. *Maryport Hematite Iron and Steel Co.*, [1892] 1 Ch. 415; *Gough* v. *Wood & Co.*, [1894] 1 Q. B. 724.  The case at bar is stronger than those

cases for implying the oratrix's assent, for here was not only possession by the mortgagor and dealing with the property, but the oratrix knew of the letting and did not object.   Hence I for one do not see why the case might not well be put on the ground of assent by her.

*Decree reversed and cause remanded with mandate.*