### EUNICE Y. COMSTOCK'S ADMR. *v.* ABE JACOBS.

January Term, 1911.

Present: MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed February 22, 1911.

*Witnesses—Incompetency—Waiver—Evidence—Admissions— Impeachment—Collateral Matters—Relevancy—Negative Evidence —Similar Facts—Harmless Error—Pleading—Plea in Offset Necessity.*

In general assumpsit by an administrator for money received by defendant from intestate, plaintiff, by calling defendant as a witness and examining him, waived his statutory incompetency and made him competent as a general witness in the case notwithstanding the provisions of No. 64, Acts 1908.

The fact that the several administrator of two estates sued in behalf of one of them for the value of property that came into defendant's possession under a joint arrangement with the two intestates does not

authorize an inference against the claim of ownership made by the administrator in his subsequent action against the same defendant in behalf of the other estate for the value of the same property, where it does not appear that the administrator, when he brought the first action, knew to which of the estates the property belonged.

In an action by an administrator for money that he claimed defendant had received as the proceeds of intestate's bank book, the qustion, asked defendant, whether he received the money represented by the bank book "which was the property of" intestate, was objected to as assuming that the book was intestate's property, whereupon the court directed that the question be merely whether defendant had received the money, and thereupon defendant was again asked whether he received a designated sum of money "the property of" intestate, which was again objected to for the same reason, and defendant answered, "I received the money from the bank." *Held,* that this was harmful error, notwithstanding the question was not expressly answered as the jury might have inferred that defendant admitted that he received the money as intestate's property because he did not expressly negative that fact in his answer.

If a witness's answer to a cross-question has such a connection with the issues that it could be given in evidence, it is not collateral, and the witness may be contradicted thereon.

Defendant's negative answer to the cross-question whether since the trial began he had been to a room occupied by a designated witness and called her a liar, was collateral matter, and so could not be contradicted by the testimony of such witness.

Where a bill of exceptions purports to state the ground of a ruling, it will be presumed to state the full ground so far as necessary to show the scope and point of the exception.

Where the transcript is made a part of the bill of exceptions, so far as material, but is not made controlling, this Court is limited by the bill of exceptions in considering questions that depend on the evidence.

In assumpsit by the several administrator of the estates of a husband and wife for the value of property claimed to have belonged to the husband and received by defendant under a joint arrangement with both intestates, where it appeared that the intestates had lived with defendant as part of his family after the property came into his hands, it was error to exclude the question, asked defendant's wife, whether she had ever heard any directions to her husband by either intestate as to the disposition of the money or property turned over to him, since a negative answer would tend to show that no such direction was given.

As a general rule, inferences cannot be drawn from one transaction to another merely because the two resemble each other, but only when the transactions are connected by the chain of cause and effect.

The only presumptions of fact which the law recognizes are immediate inferences from facts proved.

In an action of general assumpsit, the general issue makes admissible any evidence tending to show that plaintiff never had a cause of action, hence under that plea evidence was admissible of a contract between defendant and plaintiff's intestate by which the money sued for became defendant's property, and so that contract need not have been pleaded as a counter claim.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by jury at the June Term, 1910, Orange County, *Stanton*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*David S. Conant, Frank S. Williams, Stanley C. Wilson* and *R. M. Harvey* for the defendant.

Defendant's answer that he did not call the witness a liar was collateral matter which it was error to allow plaintiff to contradict by the testimony of the witness. Wigmore on Evidence, §1020; *Gregg* v. *Willis*, 71 Vt. 313; *Powers* v. *Leach*, 26 Vt. 277; *Sterling* v. *Sterling*, 41 Vt. 80; *Wright* v. *Williams*, 47 Vt. 222; *Fairchild* v. *Bascomb*, 35 Vt. 398; *McCulloch* v. *Insurance Co.*, 32 U. C. Q. B. 610; *McCulloch* v. *Insurance Co.*, 34 U. C. Q. B. 384; *Attorney General* v. *Hitchcock*, 1 Exch. 99; *Stevens* v. *Beach*, 12 Vt. 585; *Seavy* v. *Dearborn*, 19 N. H. 356; *State* v. *Hoffman*, 46 Vt. 176; *Wing* v. *Hall*, 47 Vt. 182.

It was error to exclude the evidence of defendant's wife that she never heard either intestate direct her husband as to the disposition of the money or property in question. 16 Cyc. 1119; *Farmers and Mechanic Bank* v. *Champlain T. Co.*, 23 Vt. 186; *Bates* v. *Cilley*, 47 Vt. 1; *State* v. *Phair*, 48 Vt. 366.

*M. M. Gordon, J. W. Gordon* and *W. H. Sprague* for the plaintiff.

WATSON, J. This is an action in general assumpsit. Plea, general issue. The specifications contain three items: one is for the proceeds of a bank book, amounting to $811.93;

one, for cash received for a fur coat, $40.; and one, a reasonable sum for the work and labor of Eunice Y. while living in defendant's family. The plaintiff offered evidence in support of all these items, but the last one was neither argued nor submitted to the jury.

It appeared on the trial that the plaintiff Sanborn was also administrator of the estate of Jackson R. Comstock, the late husband of Eunice Y., and as such had brought a suit in general assumpsit against the defendant, the same being now pending; that the two intestates were old people and about March, 1907, went to live with the defendant and his wife, the latter having been brought up by them from three years of age, and having lived with them until, and for some time after, her marriage; that prior to going to live with the defendant, each of the intestates had some property: Eunice Y. a deposit in a bank of about $800, and Jackson R. a farm worth $1100, about $700 in a bank, and some chattels of no great value; that prior to the same time the farm was sold and the proceeds thereof, together with the money in the bank belonging to Jackson R., and all his chattels, were turned over to the defendant, as was also the bank book of Eunice Y., under a contract made by him with both of the intestates together, whereby he was to support and provide for them during their natural lives and give them a Christian burial. The defendant's evidence tended to show that ever thereafter all the money, bank books, and chattels so turned over to him remained in his hands and possession as his own property, neither of the intestates handling any part thereof; and excepting in this way there was no evidence that defendant ever received anything for such care, support, and burial. The bank book of Eunice Y. was not formally assigned until about December 5, 1908, at which time or soon after defendant drew the money thereon from the bank and used it as his own. The plaintiff's evidence tended to show that this book was not in the defendant's hands and possession as his own property, and that it was formally assigned to him for the purpose of investment for the assignor; that the intestates went into defendant's family as boarders only; but no evidence was introduced tending to show any price agreed upon, asked, or received for care and support under such arrangement.

It appeared that the intestates lived with the defendant and his family until their deaths, and that the defendant supported and cared for them and paid their funeral expenses; that when they went there to live, Jackson R. was old and feeble, and his wife was bedridden, suffering from a broken hip and other infirmities, remaining an invalid as long as she lived; that they treated the defendant and his wife as their son and daughter, and by them were called father and mother and always treated as such, the defendant's wife in fact never knowing any other parents. The defendant's evidence tended to show that when the intestates came into his family, they had no children or near relatives with whom they could live; that Jackson R. died in August, 1908, and Eunice Y. in October, 1909.

The plaintiff, in his opening case, called the defendant as a witness and examined him at length relative to the contracts made by him with Jackson R. and with Eunice Y., under which he received all of their property, and also as to the amount of money and property he received from the latter in her lifetime. Defendant offered to show by his own testimony in defence what the contract was under which Eunice Y. came to live with him, and that he fulfilled it in every particular. The offer was excluded and an exception saved. The bill of exceptions states that defendant had before testified as to the arrangement he made with her in reference to her support. Yet the bill also states that the defendant claimed and his evidence tended to show a contract made by him with both of the intestates together, under which all of the property of the two became his in consideration of their care, support, and burials, by him; and the bill does not state that defendant had before testified as to what this contract was. As the case then stood the defendant was competent to testify, and the exclusion of the offered testimony was error. The plaintiff, by calling the defendant as a witness and examining him, as he did, waived the statutory incompetency and, irrespective of the provisions of No. 64, Laws of 1908, made him competent as a general witness in the case. *Cowles v. Cowles' Estate*, 81 Vt. 498, 71 Atl. 191; *Dee v. King*, 77 Vt. 230, 59 Atl. 839, 68 L. R. A. 860; *Paine v. McDowell*, 71 Vt. 28, 41 Atl. 1042; *Ainsworth v. Stone*. 73 Vt. 101, 50 Atl. 805; *Linsley v. Lovely*, 26 Vt. 123; *State v.*

*Slack*, 69 Vt. 486, 38 Atl. 311; *White* v. *Dow*, 23 Vt. 300. Inasmuch as this holding is broader in effect than the law of 1908,. to which reference has been made, we need not consider the scope of that act.

The defendant offered to show that the specifications filed by the plaintiff in his suit as administrator of Jackson R. Comstock's estate against the defendant contained as one item of recovery the same fur coat named in the specifications in the case at bar, which offer was excluded. This was not error. If the property of both intestates went into the hands and possession of the defendant under an arrangement made with them jointly, it cannot be said from anything before us that the common administrator, when bringing the two suits, knew to which intestate the coat belonged. Hence the mere fact that such item was put into the specifications in the other suit affords no basis. for an inference against the ownership of the intestate in this. case. "The only presumptions of fact which the law recognizes. are immediate inferences from facts proved." *Manning* v.. *John Hancock Mutual Life Ins. Co.*, 101 U. S. 693, 25 L. Ed. 761.

During the plaintiff's examination of the defendant in the opening case the question was asked whether he received the money represented by the bank book, "which was the property of Mrs. Comstock, Eunice Y." Objection was made to the question because it assumed as a fact something not true.. Plaintiff's counsel thereupon said: "I asked him if he had received the money." The court said, "Let the question stop right there," and he may answer. The plaintiff's counsel then put the question: "Mr. Jacobs, did you actually receive $811.93, the property of Mrs. Eunice Y. Comstock?" Objection was made on the ground that the ownership was in dispute. Subject to exception, the witness answered, "I received the money from the bank." This was harmful error. Notwithstanding the ruling of the court in the first instance to the contrary, the examiner persisted in making the objectionable words a part of the question, and the fact that in such respect the question was not expressly answered does not remedy the matter. The jury might reason that as the defendant's answer admits the reception of the money without denying that it was the property of Mrs. Comstock, it should be taken as an admission.

to this extent also, for had the ownership been otherwise he would say so.

The plaintiff asked the defendant in substance if since the trial began he had not been to the room occupied by Mrs. Titus, a witness for the plaintiff, and called her a liar. The answer was "No." Later in the trial Mrs. Titus was called by the plaintiff and, subject to exception on the ground that it was collateral matter, was allowed to give testimony in contradiction of the defendant in this respect. The bill of exceptions states that it did not appear that the question or answer, or the subject matter, was material or relevant to the issue in the case, but related to the credibility of the defendant as a witness. The test of collateralness is that laid down in *Attorney General* v. *Hitchcock,* 1 Exch. 91: If the answer of a witness is a matter which has such a connection with the issue, that you would be allowed to give it in evidence, then it is a matter on which you may contradict him. Applying this rule the answer given by the defendant was not otherwise than collateral, and the examining party could not contradict it for the purpose of impeachment. *Gregg* v. *Willis,* 71 Vt. 313, 45 Atl. 229; *Stevens* v. *Beach,* 12 Vt. 585, 36 Am Dec. 359; *Sterling* v. *Sterling,* 41 Vt. 80. It is said by the plaintiff in argument, however, that Mrs. Titus is an heir to the estate of Eunice Y., and consequently one of the real parties in interest to the case; and hence the state of feelings of the defendant toward her cannot be deemed collateral matter. Suffice it that such heirdom does not appear. Since the bill of exceptions purports to state the ground of the ruling, it will be presumed to state the full ground, as far as necessary to show the scope and point of the exception. *Clemmons* v. *Danforth,* 67 Vt. 617, 32 Atl. 626, 48 Am. St. Rep. 836; *Place* v. *Grand Trunk Ry. Co.,* 83 Vt. 498, 76 Atl. 1110. A transcript of the evidence is referred to and made a part of the exceptions, so far as material; but since this reference is general and the transcript is not made controlling, our consideration of the question is governed by the bill. *State* v. *Howard,* 83 Vt. 6, 74 Atl. 392; *Lawson* v. *Crane & Hall,* 83 Vt. 115, 74 Atl. 641; *Slack* v. *Bragg,* 83 Vt. 404, 76 Atl. 148.

During the examination of the defendant's wife, as a witness, she was asked by the defendant's counsel whether she had ever

heard any direction given to her husband by either of the intestates as to the use or disposal of the money or property they turned over to him. The evidence was excluded on the objection that the situation of the witness does not make a negative answer material. This evidence should have been received. Situated as the witness was with reference to the intestates after the property was thus turned over, and with respect to caring for them in their infirmities, we think a negative answer to the question asked would have some tendency to show that no such direction was given. 1 Wig. Ev. Sec. 664.

It appeared that before going to live with the defendant the intestates had, within a few years, at least four different parties come to live with and care for them under some arrangement by which they turned over or were to turn over all their property for their care and support; that there was a contract between the last of such parties(one Thurber) and the intestates relative to the disposal of their property and to their care and support during their natural lives, which contract, because of trouble between the parties, was terminated immediately before the making of the contract between the intestates and the defendant; that the last named witness had personal knowledge as to the terms of the contract with Thurber, and its termination, together with the conditions and circumstances attending the same. In that connection the witness was asked whether or not by that arrangement the Thurbers were to have the property for the care and support of the intestates during their lives, offering to show that the property was transferred to the Thurbers for that purpose, as making it more probable that a like contract was made by the intestates with the defendant. Objection being made that it was not the best evidence, the offer was excluded. The general rule is well established that you cannot "draw inferences from one transaction to another that is not specifically connected with it merely because the two resemble each other; that they must be linked together by the chain of cause and effect in some assignable way before you can draw your inference"; but this rule has its exceptions. *Aiken* v. *Kennison*, 58 Vt. 665, 5 Atl. 757; *Phelps* v. *Conant*, 30 Vt. 277. Whether the two transactions were so connected, or

whether they so fall within the exceptions to the general rule, as to make the evidence offered admissible we do not determine.

The court charged the jury that the burden of proof was with the defendant upon his counter claim that there was a contract between him and Eunice Y., by the terms of which, if performed by him, he was to have the money in question. The plea that the defendant did not undertake or promise as alleged in the declaration naturally and in terms only puts in issue the allegation of the promise, and under it any matter which shows that the plaintiff never had any cause of action may be given in evidence. 1 Chitty Pl. 476, 478. Showing a contract between defendant and Eunice Y. separately, or jointly with her husband, fully performed by both parties, by which the money became the property of the defendant, is a defence consisting of a matter of *fact* amounting to a *denial* of such allegations in the declaration as the plaintiff on the general issue is bound to prove in support of his case. See 1 Chitty, Pl. 527; *Kimball* v. *Boston etc. R. R. Co.*, 55 Vt. 95; *Boyden* v. *Fitchburg R. R. Co.*, 70 Vt. 125, 39 Atl. 771. It follows that no counter claim was involved in the defence, and that the portion of the charge asserting such claim and the burden of proof thereon was unwarranted, as not within any issue made by the pleadings and outside of the evidence in the case. *Smith* v. *Central Vermont Ry. Co.*, 80 Vt. 208, 67 Atl. 525.

*Judgment reversed and cause remanded.*

ROWELL, C. J., did not sit.