---

H. T. SEAVER, R. P. WEBSTER, AND W. W. REIRDEN *v.* LILLIA A. LANG AND TRUSTEES.

January Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed November 19, 1918.

*Executory Contract for Purchase of Real Estate—Remedies of Vendor—Measure of Damages—Pleading—Common Counts —Amendment—Contracts of Married Women—Common Law—Statute—Sole and Separate Estate—Purchase of Real Estate—Surety for Husband—Trial—Motion for Verdict by Both Parties—Questions for Jury— Wife as Husband's Agent—Agent's Individual Liability—Evidence Outside of Issues.*

The vendor in an executory contract under seal for the purchase of land containing an absolute promise to pay the purchase price, and where the vendee is in possession, can maintain an action for the recovery of the purchase money under an appropriate common count.

In such case, the vendor is not confined to an action of damages for the breach of the contract, but can proceed in equity, can bring ejectment, can sue for general damages, or he can sue for the purchase money.

In such case, it was not error for the court, after the verdict and before judgment, to permit the plaintiffs to amend their declaration by filing an appropriate common count.

A married woman can make contracts and bind herself and property at law only so far as the statute authorizes her to do so.

When a married woman enters into a contract affecting her property not held to her sole and separate use, her responsibility is to be measured by the common law, and not by the statute.

The real estate of a married woman is not held to her sole and separate use, except where there is some provision so limiting it in the contract, deed, or decree by which she acquires it.

Under G. L. 3521, a married women may buy real estate on credit and bind herself for its payment, and that she has no separate estate does not affect her personal liability.

Where it is claimed that a debt contracted by a married woman is in fact the debt of her husband, the real purpose and character of her undertaking rather than its form controls, and unless the debt became hers by reason of a valid consideration moving to her, it remains the husband's, and her obligation is in its essence that of suretyship.

Where the defendant and her husband deeded his land to the plaintiffs in consideration of their paying his debts, and they gave the defendant a contract by which they agreed to sell, and she to buy, the land for a sum specified as the amount of his debts, the debt so contracted by her was her debt, and not her husband's and therefore void under G. L. 3523, if the arrangement between herself and her husband was that she could have what she could save out of the property, and she contracted with the plaintiffs with that end in view, and on her own account, and for her own benefit.

It is not enough that each party moved for a verdict to establish a consent that the court might take the case from the jury, but it must affirmatively appear that neither party wished to go to the jury.

Grounds for granting a motion for a verdict, which were not made below, will not be considered under an exception to the refusal to grant the motion.

A married woman, acting for her husband, a disclosed principal, may bind herself by a contract in her own name.

It is not error to exclude evidence of matters wholly outside the issues made by the pleadings.

ACTION OF CONTRACT on a land contract. Plea, the general issue. Trial by jury at the March Term, 1917, Orleans County, *Fish*, J., presiding. At the close of all the evidence both parties moved for a directed verdict, and the court directed a verdict for the plaintiffs. The defendant excepted. The opinion states the case.

*Williams & Smith* and *Frank D. Thompson* for the defendant.

In executory contracts for the sale of land where there is a breach by the vendee, the vendor is not entitled to recover the amount of the purchase money as damages, but his damage is the difference between the price he was to receive and the value of the land left on his hands. *Laird* v. *Pim,* 7 M. & W. 474, 478; *Telfener* v. *Russ,* 145 U. S. 522; *Sawyer* v. *McIntyre,* 18 Vt. 27; *Old Colony R. R.* v. *Evans,* 6 Gray (Mass.) 25, 66 Am. Dec. 394; *Griswold* v. *Sabin,* 51 N. H. 167, 12 Am. Rep. 76.

If the purpose of the new count was to enable the plaintiffs to recover for the breach of an executory contract, it was error to allow the plaintiffs to amend their declaration in this respect, as it stated a new cause of action. *Brodek & Co.* v. *Hirschfield,* 57 Vt. 12; *Estabrooks* v. *Fidelity Mut. Fire Ins. Co.,* 74 Vt. 202; *Derosia* v. *Ferland,* 83 Vt. 372.

The general rule is that a married woman's common-law disability to contract still exists, except as it has been expressly removed by statute. 13 R. C. L. 1268; *Ring* v. *Burt,* 17 Mich. 465, 97 Am. Dec. 200; *Harvard Pub. Co.* v. *Benjamin,* 84 Md. 333, 57 Am. St. Rep. 402; *Roop* v. *Real Estate Investment Co.,* 132 Pa. 496, 7 L. R. A. 211; *Bank of Commerce* v. *Bowers,* 14 Idaho 75, 17 L. R. A. (N. S.) 676; *Haas* v. *Shaw,* 91 Ind. 384, 46 Am. Rep. 607; *Lord* v. *Parker,* 3 Allen 127.

Where both parties moved for a directed verdict, and the court granted the motion of one party, unless it affirmatively appears that neither party wished to go to the jury, the case stands before this Court the same as though the prevailing motion for a verdict was the only one presented to the court below. *Fitzsimmons* v. *Richardson,* 86 Vt. 229; *Woodsville, etc., Bank* v. *Rogers,* 82 Vt. 468.

And, if there is any evidence tending fairly and reasonably to support the claim of the other party, the case must be reversed. *Latremouille* v. *Bennington & Rutland Ry. Co.,* 63 Vt. 336; *Lindsay* v. *Lindsay,* 11 Vt. 621; *Noyes* v. *Rockwood,* 56 Vt. 347; *Bass* v. *Rublee,* 76 Vt. 395; *Breese* v. *McCann,* 52 Vt. 498; *Smith* v. *Town of Franklin,* 61 Vt. 385; *Manley* v. *Delaware & Hudson Canal Co.,* 69 Vt. 101; *Empire State Cattle Co.* v. *Atchison, etc., R. Co.,* 210 U. S. 1, 52 L. ed. 931.

Where evidence is given tending to prove a material fact, it is error for the court to adjudge it insufficient, and direct a verdict. *Jones* v. *Booth,* 10 Vt. 268; *Fairbanks* v. *Nelson,* 56 Vt. 657.

Since the defendant's husband was away from home and she was in charge of his affairs so far as she could look after them, and since the subject-matter of the transaction was all his, and since she and Reirden were in constant communication with him concerning the same, the presumption is that, in what she did, she was acting as agent for her husband. *Felker* v. *Emerson,* 16 Vt. 653; *Meader* v. *Page,* 39 Vt. 306; *Brown* v. *Woodward,* 75 Conn. 254, 53 Atl. 112; *Benjamin* v. *Benjamin,* 15 Conn. 347, 39 Am. Dec. 385.

If, when the defendant executed the contract, the plaintiffs knew she was acting as agent for her husband, and the contract was within the scope of her authority, she is not liable although the contract was made in her name. *Roberts* v. *Button,* 14 Vt. 195; *Hall* v. *Huntoon,* 17 Vt. 244; *Abbott* v. *Cobb,* 17 Vt. 593; · *Alexander* v. *Bank of Rutland,* 24 Vt. 222; *Landon* v. *Proctor,* 39 Vt. 78; *Johnson* v. *Cate,* 77 Vt. 218.

*W. W. Reirden* and *E. A. Cook* for the plaintiffs.

POWERS, J.  In the spring of 1914 the late Frank Lang held title to certain property in Barton.  It consisted of a village lot and residence thereon occupied by him and his family, called the home place; a barn on the Fair Ground near by, called the Holder barn, and a pasture called the Brown pasture.  He also owned two valuable horses, one a mare called Delisle, and the other a stallion called Childs.  This property was all mortgaged to the Barton Savings Bank & Trust Company to secure Lang's debts to the amount of over $4,000.  He owed other notes and bills to various parties, on some of which suits had been brought and his equity in the property mentioned or some of it attached. With his affairs in this situation, he accepted a position in Minnesota, and went there, leaving his wife and family in Barton living in the home place.  Soon after his departure other attachments were put onto his property, and finally Mrs. Lang, the defendant, set herself to the task of straightening out the tangle in her husband's affairs, and saving what she could out of the property.  After some discussion, the following arrangement

was entered into between the plaintiffs and Mrs. Lang, who, as evidence tended to show, acted upon the authority and approval of her husband: Mr. Seaver took the Brown pasture at $1,250, and he and Mr. Reirden, took the Holder barn at $1,500; both these sums being paid partly in money and partly in cancelled debts against Lang. The money involved was used to pay other debts against him. These two properties were conveyed by deed and the transactions were final. Then Lang and his wife deeded the home place to Seaver, who immediately conveyed a third interest therein to each of the other plaintiffs. The latter, having paid or assumed the other Lang debts, gave Mrs. Lang a land contract for the home place, which she had occupied all the time, and which she continued to occupy until her death as hereinafter stated. The foregoing arrangement was one transaction only; the deed of the home place and the contract to Mrs. Lang being successive steps in it. The contract was nothing more than an arrangement to secure the amount specified as the purchase price therein. By its terms the plaintiffs agreed to sell to Mrs. Lang, and she agreed to buy, the home place for $4,492.83, payable on demand with interest annually. The plaintiffs agreed therein that on payment of this sum and compliance with her other agreements therein, they would convey to Mrs. Lang the premises by warranty deed. The amount specified as the purchase price was the remainder of the Lang debts, paid or assumed by the plaintiffs, as they then figured it.

Lang died in 1916, and left an insurance, $1,500 of which was payable to Mrs. Lang. This suit is brought for the recovery of the sum specified as the purchase price in the land contract, and the insurer is summoned as trustee. Mrs. Lang died after the trial below, and her administrator is here defending. The declaration was in the common counts, and the plea was the general issue. The court below ordered a verdict for the plaintiffs, and the case is here on the defendant's exceptions.

When the land contract was offered in evidence, the defendant objected on the grounds that it was an executory contract, merely, and that it was under seal, for each of which reasons recovery could not be had under the common counts. On the first of these propositions, the defendant cites *Hemenway* v. *Smith*, 28 Vt. 701. Just what the Court decided in that case was this: That the plaintiff there could not recover the amount which the defendants agreed to pay him for an assignment of an

executory contract of purchase of the so-called Gould farm, under a declaration containing only the general counts there used. But it appears that these were only three in number, one for money had and received, another for use and occupation, and the third for money lent and accommodated. None of these was adapted to a case of the kind then at bar. So the decision goes no further than the one in *Wertheim* v. *Fidelity & Casualty Co.*, 72 Vt. 326, 47 Atl. 1071. The origin and growth of the so-called common counts form an interesting chapter in the development of our system of pleading; but it is enough here to say that new counts have been from time to time added to the common counts until there is now in use, in some parts of the State at least, a printed form containing a general count adapted to a case of this kind. It must be admitted that this declaration did not originally contain any such count. But this defect was remedied by an amendment.

In this connection, it is further urged that a vendor's remedy at law in a case like this is an action for damages for the breach of the executory contract, and that the sum specified cannot be recovered, but only damages represented by the difference between the purchase price and the value of the premises. There are cases apparently holding this doctrine. So far as these are at hand, they are cases where the vendor retains the possession. In such cases the rule just referred to may afford compensation. But where the vendee takes and retains possession, and the promise to pay is positive and absolute, and the position of the parties is unaffected by foreclosure or other proceedings, recovery of the purchase price should be allowed. To refuse it would be to ignore the plain terms of the engagement. The contract before us contains a direct and absolute promise to pay. In such a case we assert the rule approved in *Waite* v. *Stanley,* 88 Vt. 407, 92 Atl. 633, taken from *Hansbrough* v. *Peck,* 5 Wall. 497, 18 L. ed. 520. When Mrs. Lang defaulted, the plaintiffs had several remedies available: They could proceed in equity, as was done in *Paine* v. *McDowell,* 71 Vt. 28, 41 Atl. 1042; they could bring ejectment, as was done in *Reynolds* v. *Bean,* 91 Vt. 247, 99 Atl. 1013; they could sue for general damages, as was done in *Allen* v. *Mohn,* 86 Mich. 328, 49 N. W. 52, 24 Am. St. Rep. 126; or they could sue for the purchase money. See *Arbuckle* v. *Hawks,* 20 Vt. 538.

Assuming that the plaintiffs had done all that the contract required of them, there was nothing for the defendant to do but pay the money. Under our simplified system of pleading, if not before, this could be recovered under an appropriate general count. Such a count was allowed to be filed as an amendment to the original declaration. No question as to the sufficiency of this new count is before us, as the only exception saved was to the action of the count in allowing it to be filed. And in this there was no error. G. L. 1796.

Nor can the contention be sustained that the damages are to be measured by the difference between the value of the premises and the purchase price. The damages are compensatory. Whatever the rule might be when a purchaser surrenders the possession or the vendor secures it, when, as here, the purchaser holds the possession and manifests a purpose to continue to hold it, the recovery is the amount due on the contract.

At the close of the evidence, the defendant moved for a verdict, and the motion being overruled, excepted.

One of the grounds relied upon in support of this motion is that the defendant, being at the time a married woman, and it not being provided in the contract that the home place was to be conveyed to her sole and separate use, was incapable of making this executory contract and thereby binding herself and her property.

In the consideration of the question thus raised, it must constantly be kept in mind that a married woman can make contracts and bind herself and property at law only so far as the statute authorizes her to do so. Nor should we forget that our holdings are that, when a married woman enters into a contract affecting property not held to her sole and separate use, her responsibility is to be measured by the common law and not by the statute. *Rowley* v. *Shepardson*, 83 Vt. 167, 74 Atl. 1002, 138 Am. St. Rep. 1078; *First Nat. Bank* v. *Bertoli*, 87 Vt. 297, 89 Atl. 359, Ann. Cas. 1917 B, 590; *Barrows* v. *Dugan's Estate*, 88 Vt. 441, 92 Atl. 927; *French* v. *Slack*, 89 Vt. 514, 96 Atl. 6.

The determining question then is this: Is this contract one affecting property not held to the sole and separate use of the wife within the meaning of this rule?

That the home place was not then or thereafter to become property held to the sole and separate use of Mrs. Lang is apparent; for the real estate of a wife is not so held except it be

that there is some provision so limiting it in the contract, deed, or decree by which she acquires it. *Ainger* v. *White's Admx.*, 85 Vt. 446, 82 Atl. 666. That a married woman was not, at common law, liable upon an executory contract like this, is not to be doubted. 13 R. C. L. 1281; *Warren* v. *Costello*, 109 Mo. 338, 19 S. W. 29, 32 Am. St. Rep. 669; 1 Benj. Sales, § 34. This resulted from her general incapacity to contract, under which she could not create a valid debt against herself (*Farrar* v. *Bessey*, 24 Vt. 89), or ratify one thus attempted; after she became single. *Hayward* v. *Barker*, 52 Vt. 429, 36 Am. Rep. 762.

But under our statute (G. L. 3521) the capacity of a married woman to make contracts is general. Capacity is the rule, and incapacity the exception. She may contract like a single woman, except as forbidden by the statute (*Bartholomew* v. *Allentown Nat. Bank*, 260 Pa. 509, 103 Atl. 954; *Anderson* v. *Citizens' Nat. Bank*, 38 Ind. App. 190, 76 N. E. 811), and except as forbidden by the holdings referred to. *Barrows* v. *Dugan's Estate, supra.* Under such a statute,—the last-named exception aside,—a married woman may buy real estate on credit and bind herself for its payment (21 Cyc. 1318),. and the fact that she did not have a separate estate would not affect her personal liability. *Barrows* v. *Dugan's Estate, supra.*

An examination of our cases above referred to shows that they are founded upon the necessity of protecting the marital rights of the husband in the real estate of the wife. Such rights are still recognized and protected, and cannot be taken away without his consent. But, unless this contract was valid, the husband never acquired any marital rights under it. To assert that his marital rights attached to the home place under the contract here in question is to assert the validity of that contract. If the contract is not valid, it is wholly void. If it is to be tested by common-law rules, it is void, and not voidable. *Hayward* v. *Barker, supra.* And if the contract is void as to Mrs. Lang, it is void as to these plaintiffs (13 R. C. L. 1254), and void as to everybody whose rights would be affected by it if valid (6 R. C. L. 591; *Kellogg* v. *Howes*, 81 Cal. 170, 22 Pac. 509, 6 L. R. A. 588), and Lang acquired no marital rights under it. It is not necessary, then, in order to protect the husband's rights here to declare this contract to be void for want of capacity, and the case does not come within the spirit of our previous holdings.

It was also claimed under this exception that this contract was not binding upon Mrs. Lang, because she thereby became holden for her husband's debt, which is expressly prohibited, except by way of mortgage, by P. S. 3039 (G. L. 3523).

In examining this question, attention is to be given to the real purpose and character of the undertaking rather than its form. *First Nat. Bank* v. *Bertoli, supra.* As we have already seen the sum specified as the consideration of the contract was the unpaid balance of Lang's debts. This was what Mrs. Lang agreed to pay. Her evidence tended to show that the entire arrangement was made by her under directions from her husband and for his benefit. That she gave her own promise or obligation, instead of his or a joint one, is unimportant. Unless the debt became her debt, by some arrangement based upon a valid consideration moving to her, it remained his, and her obligation is in essence that of suretyship. *Bank* v. *Bertoli, supra.*

But the evidence on this branch of the case was not all one way. There was evidence tending to show that Lang told the defendant that she could have what she could save out of the property. If this was the arrangement between herself and her husband, and she contracted with the plaintiffs with that end in view and on her own account, and for her own benefit, then the debt was hers, and not her husband's, though it resulted or was to result in the payment of his debt. In such circumstances, after the contract with the plaintiffs, Lang's rights in the property were marital, only; whereas prior to that contract her rights in the property were marital, only. With this conflict in the evidence, it was not error to overrule the defendant's motion so far as it depended upon this point.

The plaintiffs also moved for a verdict at the close of the evidence. Just what took place in this connection is shown by the transcript, which is referred to and made controlling. It was this: The court asked defendant's counsel what question there was for the jury, and the latter replied, "I don't think there is any, if the court takes the view of the law as we do." Then, turning to the plaintiffs, the court asked if they thought there was any question for the jury, and they replied that they did not, and that they joined in the motion and thought a verdict should be ordered for them. Thereupon the court said, "You both agree that there is no question for the jury," and directed the plaintiffs to figure up the amount of their claim. Immedi-

ately, counsel for the defendant explained: ''I would like to qualify or withdraw one statement, and that is that I thought there was nothing to be submitted to the jury. What I meant was that the plaintiffs' evidence shows that the defendant, if she assumed anything, it was as surety for her husband, and we also claim that she had no legal capacity to make such a contract in regard to real estate; but if the court says that the plaintiffs' evidence tends to show that she did make a contract which she had a right to do, we say that the defendant's evidence tends to show that she was acting as her husband's agent in executing this land contract and doing what she did, and that is a question which should be submitted to the jury, in addition to our claim which shows that she simply was a surety.''

Notwithstanding this, the court asserted that both parties had claimed that there was no question for the jury, and in this view ordered a verdict for the plaintiff. The mere fact that each party moved for a verdict did not amount to consent that the case should be taken from the jury. It is only when it affirmatively appears that neither party wishes to go to the jury that it is for the court to direct such verdict as in its judgment the evidence requires. *Fitzsimmons* v. *Richardson*, 86 Vt. 229, 84 Atl. 811. In the case before us it did not affirmatively appear that both parties assented to the proposition that there was nothing for the jury. The court was mistaken in its assertion that they agreed on this question. The defendant's assent was conditional. When her counsel saw the misapprehension of the court he immediately explained his position, fully and clearly. He was in a position to insist that the question of Mrs. Lang's relation to the debt she agreed to pay, should be submitted to the jury, and the question of agency also, if there was any evidence fairly and reasonably tending to establish it.

It is here urged that the contract presented the case of mutual and dependent covenants; that the plaintiffs' engagement to deed and the defendant's promise to pay were dependent; and that no recovery could be had without proof of a tender of a deed or its equivalent. And this is urged as a reason why the defendant's motion for a verdict should have been granted. But the defendant did not make the point below. The grounds of her motion were there made specific. This was not one of them. Therefore, we will not consider it. *Spencer* v. *Potter's Est.*, 85 Vt. 1, 80 Atl. 821. And for the same reason

the defendant will not now be heard to urge this ground as a reason why the plaintiffs' motion for a verdict should not have been granted.

As we have said, the defendant was, at the close of the evidence, in a position to insist that the question of her relation to this debt be submitted to the jury. But the plaintiffs take the position that she has lost this right through the inadequacy of her exceptions. When the court disposed of the plaintiffs' motion by granting it, the presiding judge addressed the jury, briefly explaining the situation, appointed a foreman, and directed him to sign the plaintiffs' verdict. Following this, an exception was taken by the defendant to the refusal of the court "to submit the question of agency to the jury." So far, then, no question but that of agency was saved. But after the verdict had been read by the clerk, another exception was taken, which must have been to the granting of the plaintiffs' motion for a verdict and which was unrestricted. In' so construing the record before us, we are not unmindful of the rule that a bill of exceptions is to be construed against the excepting party. But it is to be construed reasonably, and in a way to preserve the rights of all parties so far as its language permits. From the course of the trial, the position taken and adhered to by the defence, and the unrestricted statements of the bill itself, the only reasonable construction of this record is the one we have adopted. For the reasons hereinbefore stated, this exception is sustained.

It was not error to refuse to submit the question of agency. There are, here and there in the transcript, statements which, taken by themselves, could be taken as indicating an agency on the part of Mrs. Lang; but the evidence as a whole is not subject to that interpretation. One acting for a disclosed principal may, if he chooses, bind himself. *Bradley* v. *Blandin,* 89 Vt. 542, 95 Atl. 894. And he does bind himself when, as here, the contract is in writing, and in clear unambiguous language purports to be the engagement of the agent and not the principal. Story, Agency, Par. 269, *et seq.;* 2 C. J. 814; 21 R. C. L. 848; *Cream City Glass Co.* v. *Friedlander,* 84 Wis. 53, 54 N. W. 28, 21 L. R. A. 135, 36 Am. St. Rep. 895; *Stackpole* v. *Arnold,* 11 Mass. 27, 6 Am. Dec. 150; *Arfridson* v. *Ladd,* 12 Mass. 173; *Andrews* v. *Estes,* 11 Me. 267, 26 Am. Dec. 521; *Clealand* v. *Walker,* 11 Ala. 1058, 46 Am. Dec. 238; *Bank of Rochester* v. *Monteath,* 1 Denio (N. Y.) 402, 43 Am. Dec. 681.

In the contract before us, the promise is Mrs. Lang's, not Mr. Lang's; the signature is hers, not his; the seal is hers, not his. *Freeman* v. *Barron's Estate*, 92 Vt. 462, 105 Atl. 255.

There was no error in excluding the evidence regarding the profits made by the plaintiffs on the property when sold. This was wholly outside the issues made by the pleadings and therefore inadmissible. *Brown* v. *Aitken*, 90 Vt. 569, 99 Atl. 265.

*Judgment reversed and cause remanded.*