## GEORGE B. DEE v. FRANCIS KING.

### October Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 26, 1905.

*Easements—Right of Way—Quasi Easements—Deeds—Exception and Reservation Distinguished—Witness—Incompetency—Waiver.*

In a suit in chancery involving the existence of a right of way, when the orator called and used the defendant as a witness to show that orator's father passed through and over the land in question, his habit and custom in so doing, to what extent, under what circumstances, and for what purpose, the orator thereby waived his right to object to the defendant on the ground of incompetency, when subsequently called in his own behalf.

Although the strict office of an exception in a deed is to exempt from the operation thereof something in *esse* and part of the thing granted, while a reservation creates in favor of the grantor some new right out of the thing granted and which was not before in *esse*, yet, in construing deeds, these terms are often treated as synonymous, and a clause intended to create an exception will have that effect though the word "reservation" is used.

Beside technical easements, there are "*quasi* easements," such as a visible and reasonably necessary drain or way used by the owner of land over one portion thereof, to the convenient enjoyment of another portion, though there has never been any separate ownership of the *quasi* dominant and the *quasi* servient tenements.

Though the owner in fee of land cannot have a technical easement therein, he may have a *quasi* easement over one portion thereof in the nature of a visible, travelled way reasonably necessary

to the convenient enjoyment of another portion; and in convey-
ing the land over which such way is, such owner may treat the
way as a thing in being and part of the estate granted, and may
except it from the operation of the deed.

Technical words of limitation are not applicable to an exception, for
the part excepted remains in the grantor as of his former title.

If, while over one portion of his farm there is a visible, travelled way
which is reasonably necessary to the convenient enjoyment of an-
other portion thereof, the owner conveys that portion over which
such way is, and in the deed, immediately following the description
of the land conveyed, is the clause, "reserving the privilege of a
pass from the highway past the house to the railroad, in my usual
place of crossing," that clause must be construed, not as a res-
ervation, but as an exception, and the way then retained became
an easement over the land conveyed and appurtenant to the other
land, and with the latter it would pass by descent, or by con-
veyance.

A right of way appurtenant to land attaches to every part of it, though
the land may go into the possession of several persons.

APPEAL IN CHANCERY. Heard on master's report and
exceptions thereto at the March Term, 1904, Franklin County,
*Start,* Chancellor. Decree dismissing bill. The orator ap-
pealed.

This case has been once before in the Supreme Court,
and the decree was reversed *pro forma* for the reason stated
in the opinion in this case. See 73 Vt. 375, for further state-
ment of the facts involved.

*H. P. Dee,* and *Farrington & Post* for the orators.

*George W. Burleson,* and *Alfred A. Hall* for the de-
fendant.

WATSON, J. When this case was here before (73 Vt.
375) the decree was reversed *pro forma* and the cause re-
manded for additional findings of fact by the special master,
as to the time when, with reference to March 16, 1882, Jared

Dee asked and obtained permission of the defendant to cross his three-acre piece of land on the east side of the Central Vermont Railroad. On the hearing before the master for this purpose, the orator introduced no further evidence. The defendant testified in his own behalf, and from his testimony the fact is found that Jared Dee first asked and obtained of the defendant permission to cross that land in January, 1882. The orator seasonably objected and excepted to the defendant's testifying to any conversation had between him and Jared Dee on this point, because Jared Dee was dead.

The defendant was called and used as a witness by the orator at the first hearing, upon the question, among other things, whether Jared Dee passed through and over the three-acre piece, his habit and custom in so doing, to what extent, under what circumstances, and for what purpose. The orator made the defendant a general witness upon that question, and he thereby waived the statutory incompetency of the defendant as a witness,—*Paine* v. *McDowell,* 71 Vt. 28, 41 Atl. 1042; *Ainsworth* v. *Stone,* 73 Vt. 101, 50 Atl. 805,—and he could not afterwards complain because the defendant gave testimony in his own behalf more fully upon the same subject matter.

Jared Dee having obtained permission of the defendant to cross the three-acre piece within fifteen years next after March 16, 1867, the orator can have no prescriptive way over it. A right of way over this land is neither set forth nor claimed by the orator in his bill; yet in one aspect of the case whether he has such a way is material.

The only right of way claimed by the orator over the defendant's land so far as appears by the bill, is over the one-half-acre piece on the west side of the Central Vermont Railroad, as reserved by Jared Dee in his deed dated October 7, 1862, conveying that land to William W. Pettingill. In that deed

immediately following the description of the land conveyed
is the clause "reserving the privilege of a pass from the high-
way past the house to the railroad in my usual place of cross-
ing." The defendant contends that these words are only a
reservation of a personal privilege to Jared Dee which could
not pass to his heirs or assigns because no words of inherit-
ance or assignment were used in connection therewith; while
the orator contends that the clause has the force of an ex-
ception, and that the servient estate thereby created passed to
the subsequent owners of the dominant estate without such
words of limitation being used. Much depends upon the con-
struction given in this regard, in the disposition of the case.
Lord Coke says that "reserving" sometimes has the force of
saving or excepting, "so as sometime it serveth to reserve a
new thing, viz. a rent, and sometime to except part of the
thing in *esse* that is granted." Co. Litt. 143, a. Sheppard says
that "a reservation is a clause of a deed whereby the feoffor,
donor, lessor, grantor, etc., doth reserve some new thing to
himself out of that which he granted before. And this doth,
most commonly, and properly, succeed the tenendum, * * *.
This part of the deed doth differ from an exception, which is
ever of part of the thing granted, and of a thing in *esse* at the
time, but this is of a thing newly created or reserved out of a
thing demised that was not in *esse* before, so that this clause
doth always reserve that which was not before, or abridge the
tenure of that which was before." Shepp. Touch. 80. Again
the same author says, that an exception clause most commonly
and properly succeeds the setting down of the things granted;
that the thing excepted is exempted and does not pass by the
grant. p. 77. The same principles were largely laid down by
this Court in *Roberts* v. *Robertson,* 53 Vt. 690. There the
deed given by the plaintiff contained a specific description of
the land conveyed, and a clause "reserving lots * * * 32,

33," etc. Under this clause the plaintiff claimed title to the two lots above named. The court, after stating the offices of an *exception* and of a *reservation* the same as above, said these terms, as used in deeds, are often treated as synonymous and that words creating an exception are to have that effect, although the word reservation is used. It was held that the clause should be construed as an exception.

In England it has been held that a right of way cannot in strictness be made the subject of either an exception or a reservation; for it is neither parcel of the thing granted, an essential to an exception, nor is it issuing out of the thing granted, an essential to a reservation. *Doe v. Lock*, 2 Ad. & E. 705; *Durham, Etc. R. R. Co.* v. *Walker*, 2 Q. B. 945. But there, as in this country, *quasi* easements are recognized in law, such as a visible and reasonably necessary drain or way used by the owner of land over one portion of it to the convenient enjoyment of another portion, and there has never been any separate ownership of the *quasi* dominant and the *quasi* servient tenements. As such easement, a drain is classed as continuous, because it may be used continuously without the intervention of man; and a right of way as non-continuous because to its use the act of man is essential at each time of enjoyment. In *Barnes* v. *Loach* (1879), 4 Q. B. D. 494, it was said regarding such easements of an apparent and continuous character, that if the owner aliens the *quasi* dominant part to one person and the *quasi* servient to another, the respective alienees, in the absence of express stipulation, will take the land burdened or benefited, as the case may be, by the qualities which the previous owner had a right to attach to them. And in *Brown* v. *Alabaster* (1888), 37 Ch. D. 490, it was said that although a right of way by an artificially formed path over one part of the owner's land for the benefit of the other portion, could not be brought within the definition

of a continuous easement, it might be governed by the same
rules as are apparent and continuous easements.

Cases involving *quasi* easements have been before this
Court. In *Harwood* v. *Benton & Jones,* 32 Vt. 724, the owner
of a water privilege, dam, and mill, also owned land surround-
ing and bordering upon the mill pond and mill, which he sub-
jected to the use and convenience of the mill privilege and
mills. A part of these adjacent lands thus subjected was
conveyed without any stipulation in the deed that any servient
condition attached thereto. The condition of the estate had
been continuous, was obvious, and of a character showing
that it was designed to continue as it had been. The Court
said this was a palpable and impressed condition, made upon
the property by the voluntary act of the owner. It was held
that without any stipulation in the deed upon that subject, the
law was that the grantee took the land purchased by him, in
that impressed condition, with a continuance of the servitude
of that parcel to the convenience and beneficial use of the
mill. It was there laid down as an unquestioned proposition
that "upon the severance of a heritage, a grant will be im-
plied of all those continuous and apparent easements which
have in fact been used by the owner during the unity, though
they have had no legal existence as easements;" and that the
doctrine was equally well settled that the law will imply a res-
ervation of like easements in favor of the part of the inherit-
ance retained by the grantor. In *Goodall* v. *Godfrey,* 53 Vt.
Vt. 219, a "visible, defined way in use for the obvious con-
venience of the whole building" was in question, consequent
on a division of the property among the representatives of the
deceased owner, and the same principles of law were applied.
And in *Willey, Admx.* v. *Thwing,* 68 Vt. 128, 34 Atl. 428,
applying the same doctrines, a right of way was upheld under
an implied reservation.

In this country it is commonly held that a way may be the subject of a reservation, and in many cases courts of high standing have held that it may properly be the subject of an exception in a grant. While it is true that an owner of land cannot have an easement in his own estate in fee, he may as before seen have a *quasi* easement over one portion in the character of a visible, travelled way reasonably necessary to the convenient enjoyment of another portion, and when such a way exists, there would seem to be no substantial legal reason why it may not be treated as a thing in being, and as a part of the estate included in the description of the grant be made an exception in a deed of the land over which the way is, when such appears to have been the intention of the parties. That this is the principle upon which a clause reserving a way is construed as an exception appears from *Chappell* v. *N. Y., N. H., & H. R. R. Co.,* 62 Conn. 195, which is more particularly referred to later. There the Court said: "Then too the right to cross was, in a certain sense, a right existing in the grantors at the date of the deed. It was a part of their full dominion over the strip about to be conveyed by the deed, and not a right to be, in effect, conferred upon them by the grantees. It was something which the 'reservation' in effect 'excepted' out of the operation of the grant."

The distinction between a reservation and an exception of a way is best understood by an examination of cases involving clauses very similar to the one here under consideration, yet so unlike as to require different constructions in this regard. In *Ashcroft* v. *Eastern R. R. Co.* 126 Mass. 196, 30 Am. Rep. 672, the clause was "reserving to myself the right of passing and re-passing, and repairing 'my aqueduct logs forever, through a culvert * * * to be built and kept in repair by said company; which culvert shall cross the

railroad at right angles," etc.   It was held that the provision
that the grantee should build and keep in repair the culvert was
an essential part of the grant, and clearly indicated that the
intention of the parties was to confer upon the grantor a new
right not before vested in him, which, therefore, could not be
the subject of an exception.   In *Claflin* v. *Boston & Albany
R. Co.* 157 Mass. 489, 20 L. R. A. 638, the clause was "re-
serving to ourselves the right of a passage way to be con-
structed and kept in repair by ourselves."   There was no
evidence of an existing way across the land.   It was held to
be a reservation and not an exception.   In *Chappell* v. *N. Y.,
N. H. & H. R. R. Co.* before cited, John W. and Benjamin
F. Brown, in 1851, owned a piece of land in New London
fronting on the river Thames and lying between that river
and Bank street.   On the river front was a wharf and docks.
Between the wharf and Bank street was about one and one-
half acres of land used by the Browns in carrying on a coal
and wharfage business.   The wharf was valuable.   In that
year the Browns conveyed, for railroad purposes, a strip of
this land, twenty-five feet wide, running through the land
and separating the wharf from the land lying westerly of the
strip conveyed, and rendering it inaccessible except by crossing
the strip.   This right of crossing was indispensable to the
Browns and all who might thereafter own the premises then
owned by them.   The deed thus conveying this strip contained
the clause "And we reserve to ourselves the privilege of
crossing and re-crossing said piece of land described, or any
part thereof within said bounds."   The way at the time of the
date of the deed was an existing one plainly visible, necessary,
and in almost constant use.   The clause was construed to be
an exception.   In *Bridger* v. *Pierson,* 45 N. Y. 601, the de-
fendant conveyed land to the plaintiff and immediately follow-
ing the description the deed contained the clause "reserving

always a right of way as now used on the west side of the above described premises   *   *   *   from the public highway to a piece of land now owned by" R.   It was held to be an exception.   In *White* v. *N. Y. & N. E. R. R. Co.* 156 Mass. 181, the action was tort for the obstruction of a private way claimed by the plaintiff over the location of the defendant's railroad, under a clause in a deed which read "reserving the passway at grade over said railroad where now made."   This way had existed as a defined roadway or cart track, and had been used in passing to and from a highway to and from parts of the lot north of the tracks before the railroad was located, and before the deed referred to was given.   The clause was held to be an exception.   These are but a few of the many decisions in different jurisdictions which might be referred to upon this question, but more are unnecessary.

The language of the clause under consideration cannot be said to be unequivocal.   We therefore look at the surrounding circumstances existing when the deed containing it was made, the situation of the parties, and the subject matter of the instrument; and in the light thereof the clause should be construed according to the intent of the parties.   At the time of making this deed Jared Dee was the owner of land on the opposite side of the railroad, consisting of a three-acre piece of tillage land, and a hill lot adjoining it on the north, chiefly valuable for its sugar works, for its pasturage, and as a wood and timber lot.   The last named lot is traversed its entire length from north to south and about a third of its width from west to east by a considerable hill, more or less ledgy and making it extremely inconvenient to cross from the grantor's own land north of the Fairbanks land, but easily reached by the now disputed right of way across the one-half-acre piece, and over the three-acre piece of tillage land.   The

greater portion of Jared Dee's sugar orchard, timber, and wood was on top and east of this hill. There was no way to or out of the hill lot except over the hill on Jared Dee's own land west of the Fairbanks land, or out through the three-acre piece and the one-half-acre piece onto the public highway leading westerly to Jared Dee's house. For more than ten years next prior to the time when Jared Dee gave the deed to Pettingill, the Dees had passed over the one-half-acre piece and through the three-acre piece almost exclusively for all purposes whenever they went to or from the hill lot, whether with team, on foot, or in any other manner, except when they got wood on the west side of the lot they went from the highway across the Fairbanks farm west of the railroad, thence over the railroad at the "middle crossing" onto the hill lot. And on rare occasions they used still another route further north wholly over Dee's land. It appears from the deed itself that in crossing the one-half-acre piece they had a particular place of travelling then known to both the grantor and the grantee, for the words used in the deed in describing it are "from the highway past the house to the railroad *in my usual place* of crossing." Thus showing the intention of the parties to be that the grantor should retain the right to pass through this land over a visible, travelled way then in existence, and that no new way was thereby being created for his benefit.

Clearly under the law and in the light of the foregoing circumstances, the clause must be construed, not as a reservation, but as an exception. When given this construction, technical words of limitation are not applicable, for the part excepted remained in the grantor as of his former title, because not granted. *Cardigan* v. *Armitage,* 2 Barn. & C. 197; *Chappell* v. *N. Y., N. H. & H. R. R. Co.* before cited; *Winthrop* v. *Fairbanks,* 41 Me. 307. We think the parties in-

tended that by this provision the grantor should permanently retain from the grant for the benefit of his land east of the railroad, the way over the one-half-acre piece, which he had been accustomed to use in crossing that land to and from the land first named. The way, thus retained became an easement over the half-acre piece of land and an appurtenant to the other land; and with the latter it would pass by descent or assignment.

Subsequent to conveying the one-half-acre lot to Pettingill, Jared Dee sold and conveyed the three-acre piece, which through mesne conveyances has become the property of the defendant. But this cannot affect the easement as an appurtenant to the hill lot; for a right of way appurtenant to land attaches to every part of it, even though it may go into the possession of several persons. *Lansing* v. *Wiswall,* 5 Denio, 213; *Underwood* v. *Carney,* 1 Cush. 285.

The master finds that if upon the facts reported the orator has a right of way or a right to cross over defendant's land to the hill lot, then the orator has suffered damage by reason of the acts of the defendant complained of in the bill, to the amount of sixty-five dollars. The orator can recover only such damages as he has suffered by acts of the defendant in obstructing the way across the one-half-acre piece, considering the fact that the orator had no right of way over or right to cross the defendant's three-acre piece. Upon this basis the damages have not been assessed. The report should therefore be recommitted for that purpose, and upon such damages being reported, a decree should be rendered that the injunction be made perpetual, and that the defendant pay to the orator the damages found with costs in this Court. The costs in the court below should be there determined.

*The decree dismissing the bill with costs to the defendant is reversed and cause remanded with mandate.*