## Sheldon Slate Products Co., Inc. v. Gertrude Kurjiaka

[ 204 A.2d 99 ]

June Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.

Opinion Filed October 6, 1964

*Sullivan & Battles* for plaintiff.

*J. Malcolm Williams* and *Gilbert F. Myers* for defendant.

Sylvester, J. This is a proceeding in Chancery. The pleadings consist of the bill of complaint, defendant's answer and cross-bill, plaintiff's replication, plaintiff's replication to defendant's amended answer and cross-bill, and defendant's supplemental cross-bill.

The defendant owns and operates a farm containing approximately four hundred acres, located in the towns of Rupert, Vermont, and Heborn, New York. The matter involved here is the rights of the respective parties in and to a slate quarry, the right to take and remove minerals therefrom, and a right of way across the defendant's farm extending to the quarry in question.

The controversy arose when the defendant obstructed the right of way involved, preventing the plaintiff from reaching and working the quarry. The plaintiff instituted a bill of complaint seeking an injunction restraining the defendant, Gertrude Kurjiaka, from obstructing the right of way. A series of pleadings followed; the case was heard by the Chancellor on the pleadings and oral testimony introduced by the parties. Findings of facts were made and filed. A decree was entered decreeing a half interest in and to the quarry to each party.

The case is here on various and numerous exceptions of the plaintiff, who, while attempting by processes of the law to remove obstructions placed in its right of way by the defendant, has, by the Chancellor's decree, lost a half interest in its slate quarry.

The plaintiff maintains that it owns the entire fee in and to the slate quarry and the right to take minerals from the westerly portion of the farm premises of the defendant, including that part located in New York State and so much in Vermont as lies east of the state line for a distance of thirty (30) rods. The defendant denies plaintiff's claim and contends that she is the owner of one-half of such interest. The parties' claimed ownership is based on a series of deeds.

The farm in question was formerly owned by one Smith Sheldon, now deceased, who had good record title thereto. By a final decree in the estate of Mr. Sheldon the property was decreed on April 18, 1940, in equal shares, to his children, Hettie Ayers, Lillian M. Sheldon, Enos Sheldon and Minnie Cramer.

By quit-claim deed executed May 11, 1940, Minnie Cramer and Edward B. Cramer, her husband, Hettie E. Ayers and Frank L. Ayers, her husband, conveyed their interests in the premises to

Lillian Sheldon and Enos B. Sheldon. This conveyance contained the following provisions:

> "Always reserving the exclusive slate quarrying or the right to take minerals from the westerly part of the conveyed premises including that part in the State of New York and so much in Vermont as lies east of the state line for a distance of thirty (30) rods but this reservation shall apply to no other part of the conveyed premises.
>
> "Together with a right of way in an easterly direction as the same is now used through the cultivated part of said farm to the railroad and highway above mentioned, which is also reserved."

By a warranty deed dated April 9, 1946, Enos B. Sheldon, Blanche C., his wife, and Lillian M. Sheldon, an unmarried woman, conveyed their interest in this farm property to Leon and Hazel Ayers, husband and wife. This deed also contained a similar provision, that is, "Always reserving unto the said Sheldons the exclusive slate quarrying or the right to take minerals." In this last deed there was also reserved "A right of way in an easterly direction as the same is now used thru the cultivated part of said farm." This deed was not properly executed in that it lacked the required two witnesses to the grantors' signatures.

To correct this error of omission, on December 1, 1952, Blanche C. Sheldon, individually, as widow of Enos B. Sheldon and as administratrix of the goods, chattels and estate of Enos B. Sheldon, and Lillian M. Sheldon executed and delivered to Leon Ayers, his wife having deceased, a quit-claim deed of the same premises described in the deed dated April 9, 1946. This quit-claim deed of December 1, 1952, contained the following provision:

> "There is excepted and reserved to this grantor, her heirs and assigns, all the mineral and quarry rights of every description whatsoever, and all the rights of way previously reserved by her and which in any way pertain to the conveyed premises."

For the purpose of correcting this same error of omission in the deed of April 9, 1946, on December 17, 1952, Lillian M. Sheldon executed and delivered to the aforesaid Leon Ayers a quit-claim deed of the same premises described in the deed of April 9, 1946. This deed contained the same exception and reservation quoted above. Both

of these deeds recited that they were executed and delivered for the sole purpose of correcting an error of omission in the execution of the deed dated April 9, 1946, from Enos B. Sheldon, Blanche C. Sheldon, and Lillian M. Sheldon.

On December 22, 1952, Leon Ayers, then the sole owner, conveyed the entire farm to the defendant, Gertrude E. Kurjiaka, and her late husband, Walter. Following a description of the property conveyed is this language:

"Subject, however, to the following restrictions: Always reserving unto the said Sheldons the exclusive slate quarrying or the right to take minerals from the westerly part of the conveyed premises, including that part in the State of New York and so much of that part in Vermont as lies east of the state line for a distance of thirty (30) rods which line is marked or indicated on the premises but this reservation shall apply to no other part of the conveyed premises."

This deed further provided that the conveyance was subject to "a right of way in an easterly direction as the same is now used thru the cultivated part of said farm."

By reference to a series of deeds bearing dates August 17, 20, 21, 22, 23, and September 5, 1962, admitted in evidence as exhibits, the heirs and descendants of Smith Sheldon conveyed to the plaintiff, Sheldon Slate Products, Inc., certain quarrying and mineral rights in the four hundred acre farm and a right of way thereto. These deeds refer to such rights in the following language:

"Intending particularly to convey to the grantee herein all right, title and interest of the grantors herein as heirs of the late Smith Sheldon, in and to the slate quarrying rights and privileges and the right to take minerals from the above described premises.

"Together with all right, title and interest of the parties of the first part in and to any easements or rights of way for ingress or egress to and from the premises described above as set forth in a certain warranty deed dated April 9, 1946, from Enos B. Sheldon et al to Leon Ayers and Hazel Ayers . . ."

With the respective chains of title standing thus, the Chancellor construed and interpreted the deeds introduced as exhibits and made these findings:

"11. That Lillian Sheldon, and Enos B. Sheldon and Blanche C. Sheldon, each reserved to themselves only a life estate to the slate quarrying or the right to take minerals from the westerly part of the conveyed premises, including that part in the State of New York and so much in Vermont as lies east of the state line for a distance of thirty (30) rods and which line is marked or indicated on the premises.

"12. Said Minnie Cramer and Edward Cramer and Hattie Ayers and Frank Ayers reserved to themselves and their heirs and assigns their interest in the slate quarrying and thus their half is now in the plaintiff.

"13. Lillian Sheldon and Enos Sheldon reserved merely a life estate and thus the deed to Sheldon Slate Products, Inc., was only their life interest. Thus the slate quarrying rights are now held by Sheldon Slate Products, Inc. in one undivided half and in the defendant Kurjiaka in one undivided half."

On these findings, the parties' rights were decreed as follows:

"6. That Lillian Sheldon, and Enos B. Sheldon and Blanche C. Sheldon, his wife, each reserved to themselves only a life estate to the slate quarrying or the right to take minerals from the westerly part of the conveyed premises, including that part in the State of New York and so much in Vermont as lies east of the state line for a distance of thirty (30) rods and which line is marked or indicated on the premises.

"7. Said Minnie Cramer and Edward Cramer, her husband, and Hettie Ayers and Frank Ayers, her husband, reserved to themselves and their heirs and assigns their interest in the slate quarrying or the right to take minerals from the westerly part of the conveyed premises, including that part in the State of New York and so much in Vermont as lies east of the state line for a distance of thirty (30) rods and which line is marked or indicated on the premises.

"8. Sheldon Slate Products Co., Incorporated, its successors and assigns, own an undivided one-half (½) interest in the exclusive slate quarrying or the right to take minerals from the westerly part of the conveyed premises, including that part in the State of New York and so much of that part in Vermont as lies east of the state line for a distance of thirty (30) rods and which

line is marked or indicated on the premises, but this reservation shall apply to no other part of the conveyed premises."

No facts were found bearing upon the intention of the parties as to what they intended to convey or reserve at the time the deeds in question were executed and delivered. . While the Chancellor. admitted in evidence the two so-called corrective deeds dated December 1, and 17, 1952, respectively, no findings or reference was made to them. This is also true of the series of conveyances executed by the heirs and descendants of Smith Sheldon to the plaintiff, Sheldon Slate Products, Inc. We find no reference to these conveyances, either in the findings of fact or the decree. It is apparent that the ownership of the quarry and mineral rights in controversy was determined as a matter of law from a consideration of the deeds referred to in the findings of fact and the decree.

While the plaintiff reserved several exceptions to the Chancellor's findings of fact and to the decree, the principal issue presented for review is the interpretation of the language in the deeds of conveyance having to do with the quarry rights in and to the slate quarry on defendant's farm.

Plaintiff claims there was error on the part of the Chancellor in finding that Lillian Sheldon, Enos B. Sheldon and Blanche C. Sheldon reserved to themselves only a life estate in the slate quarry and the right to remove minerals therefrom and in decreeing accordingly.

The source of title of the parties originates from their common grantor, Smith Sheldon.

The plaintiff claims that the heirs of Smith Sheldon retained the quarry and mineral rights. It urges that such rights were excepted therefrom in the deeds. Defendant, on the contrary, insists that the clauses in the deeds referring to the quarry and mineral rights constituted a reservation, and without words of inheritance created merely a life estate.

As stated in *Haldiman* v. *Overton*, 95 Vt. 478 at page 481, 115 Atl. 699, "The terms 'reservation' and 'exception' are often used as synonymous when the thing to be secured to the grantor is a part of the granted premises, and when so used they are to be construed accordingly. *Smith's Exr.* v. *Jones*, 86 Vt. 258, 84 Atl. 866; *Dee* v. *King*, 77 Vt. 230, 59 Atl. 839, 68 L.R.A. 860; 2 Wash. Real Prop. §645. The intention of the parties, not the language used, is control-

ling; and to ascertain the intention it is proper to look at the surrounding circumstances existing when the deed containing the language in question was made, the situation of the parties, and the subject-matter to which such language relates." This view is confirmed in *Nelson* v. *Bacon,* 113 Vt. 161, 169, 32 A.2d 140. Technically, a reservation is some newly created right which the grantee impliedly conveys to the grantor, while an exception is something withheld from a grant which would otherwise pass as a part of it. *Smith's Ex'r.* v. *Jones, supra,* 260.

During the course of the hearing, it was stipulated that such rights and interest of the parties in the slate quarry and mineral rights were to be decided and determined by the Chancellor solely upon a construction and interpretation of the deeds introduced in evidence. Apparently, by reason of this agreement on part of the Solicitors, no findings were made having to do with the intent and situation of the parties and the circumstances existing at the time of the various conveyances.

The plaintiff requested the court to find, as a part of defendant's chain of title, the two corrective deeds to Leon Ayers previously referred to, one from Blanche C. Sheldon and others dated December 1, 1952, the other from Lillian M. Sheldon dated December 17, 1952. The Chancellor declined to so find and made no reference to these deeds in his findings or the decree.

■ The execution and delivery of the deed from Enos B. Sheldon, his wife, Blanche C. Sheldon, and Lillian M. Sheldon to Leon Ayers and wife dated April 9, 1946, though defective because unwitnessed, was nevertheless evidence tending to show an agreement on part of the grantors to execute a valid deed. *Vt. Accident Ins. Co.* v. *Fletcher & Fletcher,* 87 Vt. 394, 397, 89 Atl. 480. The two so-called corrective deeds above referred to were executed and delivered for the sole purpose of correcting this error of omission in the deed of April 9, 1946, to Leon Ayers and wife, and they so stated. They conveyed the same property and expressly declared:

"There is excepted and reserved to this grantor, her heirs and assigns all the mineral and quarry rights of every description whatsoever, and all rights of way, previously reserved by her and which in any way pertain to the conveyed premises."

■ It is clear from the language of all the deeds executed by Lillian, Enos and Blanche Sheldon, including the unwitnessed instrument of August 9, 1946, that it was their intent and purpose to retain title to the fee in the slate quarry. This effect is not changed by the mere absence of words of inheritance in the original grant. *Dee* v. *King, supra;* Restatement, Property §5132, p. 275. The language in these corrective deeds carved out and removed from the farm premises conveyed to the defendant the quarry and mineral rights.

■ It was plainly the intent of the parties in the defective deed of April 9, 1946, as well as in the corrective deeds, to withdraw from their grant the quarry and mineral rights located on their then farm property. Any other construction placed on these deeds would not effectuate the intent of the parties. It was the duty of the Chancellor to construe all the deeds in both chains of title with the following principle in mind relative to the construction of deeds, namely:

> "Our master rule for the construction of deeds is that the intention of the parties, when ascertainable from the entire instrument, prevails over technical terms or their formal arrangement." *Kennedy, Admr.* v. *Rutter, Admr.* 110 Vt. 332, 338; 6 A.2d 17.

In the deed from Leon Ayers to the defendant and her late husband, dated December 22, 1952, which was subsequent to the two deeds by which Ayers derived title to the farm later conveyed to the defendant, the language "Always reserving unto the Sheldons . . ." was again employed. It is obvious no greater interest in the farm premises could be passed on to the defendant and her husband than that acquired by their grantor Ayers, and whether the words and language be construed as a reservation or exception is of little or no consequence. The die was cast by the exception from the operation of the deeds the quarry and mineral rights. Ayers acquired no rights and could convey none.

We hold there was error in finding and decreeing:

> "Gertrude Kurjiaka, her heirs and assigns, own an undivided one-half (½) interest in the exclusive slate quarrying or the right to take minerals from the westerly part of the conveyed premises, including that part in the State of New York and so much of that part in Vermont as lies east of the state line for a distance of thirty (30) rods and which line is marked or indicated on the premises,

but this reservation shall apply to no other part of the conveyed premises."

The plaintiff requested the Chancellor to find:

"10. Plaintiff Sheldon Slate Products, Inc.'s right of way runs in a westerly direction from Route number 153, and is now located on said farm premises, is twenty-two (22) feet wide and 6/10 of a mile in length, more or less, and is as has been customarily used. See plaintiff's exhibits number 15 and number 11";

and excepted to the failure of the court to comply with this request. No finding or decree was made upon the subject, except to mention that title to the property vested in the defendant was subject to a right of way. Following a view of the premises by the Chancellor, the controversy concerning the location and width of the right of way referred to in the deeds was resolved by an agreement on the part of the solicitors for the respective parties. It was stipulated that the right of way was to extend westerly from Route No. 153 a distance of approximately 6/10 of a mile, was to be 22 feet wide, and situated where it is presently defined and located. Further, defendant concedes by her pleadings the existence of a right of way, its length, and location. With the record standing thus, upon the uncontradicted evidence, the concession and stipulations, the request should have been granted, and a refusal to comply with it was error.

It is apparent, from what has been said, that the decree here must be reversed in part. Finding and decreeing that Lillian Sheldon, Enos B. Sheldon, and Blanche C. Sheldon reserved to themselves only a life estate to the quarry, or a right to take minerals from the property in question, and decreeing an undivided one-half interest of said property rights, and the right to quarry and take minerals therefrom to the defendant, Gertrude Kurjiaka, and her heirs and assigns, was error, and the decree in favor of the defendant in this particular cannot stand.

We conclude and hold that the plaintiff is the owner of the exclusive slate quarrying or the right to take minerals from the westerly part of the premises including 90 acres more or less in Hebron, New York, and so much of that part in Vermont as lies east of the state line for a distance of thirty (30) rods, and;

The plaintiff to be the owner of a right of way twenty-two feet in width which runs westerly from route number 153 for approximately six-tenths of a mile to the quarry and mineral site.

· · The plaintiff claims to have suffered substantial damage by reason of the obstruction by the defendant of the right of way to its quarry and by reason of "work stoppages" occasioned by injunction orders issued upon application of the defendant. The undisputed evidence shows that the defendant or her agents prevented access to the quarry by placing locks on a gate across the right of way, that plaintiff was enjoined from "working" its quarry for a period of several days and, lastly, following the issuance of final decree on March 18, 1964, an order was issued by the Chancellor, dated May 8, 1964, restraining the plaintiff from all quarrying operations pending final disposition of the case on appeal, or until further order of the court. This restraining order of May 8, 1964, is still in effect. Such damages as the plaintiff may have suffered, arising out of the obstruction of the right of way and those accruing upon the injunction bonds, must be established. A remand is necessary for this purpose.

The defendant claimed damages to her land by reason of the faulty manner in which the plaintiff undertook to repair or replace a culvert located at the easterly extreme of the right of way. She introduced evidence to the effect that the plaintiff installed a culvert which was inadequate to accommodate the flow of water from a stream known in the area as "Indian River," and as a result of this improper installation, her property was flooded and damaged.

The findings of the Chancellor on this item of damage established that the value of defendant's farm property just before the flooding was $7,500, and that thereafter its value was $7,200, and from this the Chancellor found the defendant sustained $300 in damage. This portion of the decree seems to be supported by the findings and must be affirmed. The results reached make it unnecessary to examine defendant's remaining claimed errors.

· The decree as it relates to the ownership of the quarrying or the right to take minerals from defendant's farm, is reversed, and it is decreed that the plaintiff is the owner of the exclusive slate quarrying or the right to take minerals from the westerly part of the premises including 90 acres more or less in Hebron, New York, and so much of that part in Vermont as lies east of the state line for a distance of thirty (30) rods.

It is further decreed that the plaintiff is the owner of a right of way twenty-two feet in width which runs westerly from Route No. 153 for approximately six-tenths of a mile to the quarry on the site

heretofore defined. The injunction order dated May 8, 1964, restraining the plaintiff's operation of the quarrying operations, is dissolved.

*The cause is remanded for a determination of plaintiff's damages and for the issuance of a modified decree in accordance with the views expressed herein. Plaintiff to recover its costs.*

*This entry is authorized by 12 V.S.A., §4605.*